TOWNS OF WELLESLEY, CONCORD,
and NORWOOD, MASSACHUSETTS,
Petitioners,

v.

FEDERAL ENERGY REGULATORY
COMMISSION, Respondent,

Boston Edison Company, Intervenor.

No. 85–1221.

United States Court of Appeals,
First Circuit.

Submitted June 29, 1987.

Decided Sept. 25, 1987.

Charles F. Wheatley, Jr., Woodrow D. Wollesen and Wheatley & Wollesen, Annapolis, Md., on petition for writ of mandamus.

Joseph S. Davies and Jerome M. Feit, Sol., Washington, D.C., for F.E.R.C., on response in opposition to petition for writ of mandamus.

Carmen L. Gentile and Bruder & Gentile, Washington, D.C., for Boston Edison Co., on response to petition for writ of mandamus.

Before BOWNES, BREYER and TORRUELLA, Circuit Judges.

PER CURIAM.

The towns of Wellesley, Concord and Norwood, Massachusetts ("petitioners") petition this court for a writ of mandamus to compel the Federal Energy Regulatory Commission ("FERC") to comply with the mandate of the earlier decision of the court in this case, *Towns of Wellesley, Concord and Norwood v. F.E.R.C.*, 786 F.2d 463 (1st Cir.1986).

## I. PRIOR PROCEEDINGS

Petitioners purchase electricity from Boston Edison Company (Boston Edison) at wholesale rates. A 1980 settlement agreement controlled, at the time this controversy arose, the method by which Boston Edison could raise these rates. Specifically, the agreement prohibited Boston Edison from increasing petitioners' rates unless a rate increase had been made effective for Boston Edison's retail customers.

In September, 1984, Boston Edison applied for a $2.95 million wholesale rate increase with the FERC. The application proposed that the increase go into effect in two stages. Petitioners objected to the rate filing. They claimed that it violated the 1980 agreement because retail rates had increased only once prior to the application. The FERC found that the contract did not bar the two-step rate increase and ordered the increased rates effective, subject to refund, as of November 28, 1984 and April 28, 1985 respectively. 29 F.E.R.C. ¶ 61,224 (November 21, 1984). The FERC also ordered hearings on whether the rates proposed by Boston Edison were reasonable. *Id.* After the FERC denied their motion for rehearing, petitioners sought review in this court of the FERC's acceptance of the rate filing.

In our prior decision, we found that the settlement agreement "require[d] that effective dates for wholesale rate increases be matched with effective dates for increases in retail rates." 786 F.2d at 465. However, the effective date of the second step of the proposed wholesale rate increase was not accompanied by a corresponding increase in retail rates. Thus, the second step of the rate filing violated the settlement agreement. *Id.* Because the FERC cannot accept rate filings that contravene private contracts, *id.* (citation omitted), we vacated the FERC's orders accepting the rate filing in two stages. *Id.* at 465–66.

Originally, we also remanded the case to the FERC with instructions to order Boston Edison to refund to petitioners, with interest, all rates it had collected pursuant to the second step of the rate increase and we ordered the FERC to conduct further proceedings as deemed necessary. On May 8, 1986, the FERC petitioned for rehearing and a suggestion for rehearing in banc. The FERC argued that the determination of a proper remedy should be left up to it. It pointed out that the authorization for the rate increase had been temporary and was subject to refund, pending the outcome of the underlying rate proceeding. A better course, the FERC argued, was to permit it to fashion a remedy in the context of the final orders concerning Boston Edison's rate increase application. We agreed and, on June 6, 1986, we limited our order to remanding the case to the FERC "to conduct further proceedings as deemed necessary and grant such remedy as is consistent herewith." *Id.* at 466. Our order vacating the FERC's acceptance of the rate filing in two stages still stood.

On June 22, 1986, the Administrative Law Judge ("ALJ") issued a decision in the underlying rate proceeding. 34 F.E.R.C. ¶ 63,023. According to the FERC, the parties have appealed the ALJ's decision and it currently is in the process of formulating an order that will resolve the issues raised in the parties' appeals and in our remand to it. However, according to petitioners, they still are paying the second step rate to Boston Edison.[1] As a result, they filed a motion, on August 27, 1986, requesting the FERC to take action pursuant to our order.[2] They claim to have received no response to this motion. The instant petition for writ of mandamus followed.

## II. MANDAMUS

■ The All Writs Act, 28 U.S.C. § 1651(a), provides, in relevant part, that "all courts established by Act of Congress may issue all writs necessary or appropri-

---

1. According to Boston Edison, the town of Norwood ceased purchasing power from it in October, 1985.

2. Because petitioners did not attach a copy of their motion, we are unable to determine precisely what action they requested the FERC take.

ate in aid of their respective jurisdictions and agreeable to the usages and principles of law." There is no doubt that we have inherent power to determine whether the FERC has complied with our earlier mandate, and that section 1651(a) is an aid to this power. *Potomac Elec. Power Co. v. I.C.C.*, 702 F.2d 1026, 1032 (D.C.Cir.1983) (citing *United States v. New York Telephone Co.*, 434 U.S. 159, 172–73, 98 S.Ct. 364, 372–73, 54 L.Ed.2d 376 (1977)). However, mandamus is a drastic remedy, suitable only in "extraordinary situations." *Kerr v. United States District Court*, 426 U.S. 394, 402, 96 S.Ct. 2119, 2123, 48 L.Ed.2d 725 (1976) (citations omitted); *Acton Corp. v. Borden, Inc.*, 670 F.2d 377, 382 (1st Cir.1982). One of the conditions for its issuance is that petitioners have "no other adequate means to attain the relief [they] desire...." *Kerr, supra,* 426 U.S. at 403, 96 S.Ct. at 2124 (citation omitted).

Petitioners claim that they are entitled to the issuance of a writ because the FERC has unreasonably delayed in complying with this court's mandate. Specifically, petitioners complain that the FERC has not issued a final order in the underlying rate proceeding and that petitioners still are paying the second step of the wholesale rate increase.

In *Telecommunications Research & Action Center v. F.C.C.*, 750 F.2d 70 (D.C.Cir. 1984) ("T.R.A.C."), the Court of Appeals for the District of Columbia Circuit set out guidelines which are relevant to our determination whether the FERC's delay in issuing a final order is so "egregious" as to warrant mandamus. In pertinent part, they provide that 1) a "rule of reason" governs the time agencies take to make decisions; 2) delays where human health and welfare are at stake are less tolerable than delays in the economic sphere; 3) consideration should be given to the effect of ordering agency action on agency activities of a competing or higher priority; 4) the court should consider the nature of the interests prejudiced by delay; and 5) the agency need not act improperly to hold that agency action has been unreasonably delayed. *Id.* at 80 (citations omitted).

Applying these standards to petitioners' claims of unreasonable delay, we find that the timing of the FERC's actions in fashioning a final order is not so "egregious" as to warrant mandamus. We issued our revised order on June 6, 1986. The ALJ, in the underlying rate proceedings, issued his decision on June 22, 1986. According to the FERC *both* sides to the dispute appealed the ALJ's findings. The FERC has been in the process of devising a final order for approximately fourteen months now.

Although the FERC is to give preference to rate proceedings such as the instant one, 16 U.S.C. § 824d(e), we cannot say that this is an unreasonable length of time for consideration of the issues raised in these proceedings. What is involved here is economic regulation, not human health and welfare. Although petitioners claim to be prejudiced by having to pay a rate that may be higher than the rate the FERC ultimately may order, they will be refunded any extra payments they have made. Given the FERC's assurances that it is moving in a diligent manner to conclude these rate proceedings, we hesitate to interfere in ongoing agency proceedings. *Cf. T.R.A.C.*, 750 F.2d at 80. At this time, therefore, the FERC's delay does not render petitioners' remedy—to await a final order—inadequate.

The cases in which courts have afforded relief have involved delays of years. For example, in *Potomac Elec. Power Co. v. I.C.C., supra,* the rate proceedings had been ongoing for eight years. The court there issued mandamus and ordered the I.C.C. to reach a final decision within sixty days of its order. 702 F.2d at 1035. In *T.R.A.C.*, delays of approximately five years and two years by the Federal Communications Commission, while not warranting mandamus, led the court to order the F.C.C. to inform it of the dates by which it anticipated resolving the issues before it. 750 F.2d at 81; *cf. MCI Telecommunications Corp. v. F.C.C.*, 627 F.2d 322, 324–25 (D.C.Cir.1980) (four year delay unreasonable); *Nader v. F.C.C.*, 520 F.2d

182, 206 (D.C.Cir.1975) (delay of ten years unreasonable).

Petitioners' claim, that by not rejecting the step two increase when we clarified our remand in June, 1986 the FERC has not complied with our mandate, is more troubling. Under the *Sierra-Mobile*[3] doctrine, upon which we based our prior decision, a utility cannot unilaterally change contracts to which it is a party. As the Supreme Court has stated, a new rate schedule which purports to change the rate set by a contract is a "nullity." *United Gas Pipe Line Co. v. Mobile Gas Serv. Corp.*, 350 U.S. 332, 347, 76 S.Ct. 373, 382, 100 L.Ed. 373 (1956). The only lawful rate in these circumstances is the contract rate. *Id.* Thus, the FERC has no power to accept for filing rates that contravene an existing contract. *See Sam Rayburn Dam Elec. Coop. v. F.P.C.*, 515 F.2d 998, 1005 (D.C.Cir.1975) (court remanded with instructions to reject the rate filing), *cert. denied*, 426 U.S. 907, 96 S.Ct. 2229, 48 L.Ed.2d 832 (1976).

Here we found that the second step rate increase was a nullity because it violated the 1980 settlement agreement. As a result, the FERC had no power to accept Boston Edison's rate filing in so far as it was to become effective in two stages. Our order vacating the FERC's authorization of this two step increase reflects this rule. In practical terms, the effect of our decision is that the only lawful rate petitioners can be charged is the rate which does not violate the contract—the first step increase. However, petitioners still are paying the rate represented by the second stage.

The fact that the present rate is temporary and ultimately subject to refund is irrelevant to the question whether Boston Edison could continue to charge petitioners the second step increase once our mandate issued. We declined to order refunds of prior payments made under the unlawful rate because to do so would interfere with the FERC's jurisdiction to fashion an appropriate remedy in the context of the underlying rate proceeding. As the FERC pointed out, a determination of the amount of refunds ultimately due petitioners depends on the rate the FERC approves in its final order. An order directing that Boston Edison cease charging petitioners the second step of the rate increase, however, did not have the same potential for interference with the FERC's jurisdiction. Such an order merely would have enforced the petitioners' rights to be charged the contract rate.

Despite the foregoing, we decline to issue mandamus at this late stage in the proceedings. Because the FERC assures us that its staff is in the process of drafting a final order, petitioners soon will have the relief they seek. Thus, we find that the circumstances are not so extraordinary as to warrant the drastic remedy of mandamus. We wish to make clear, however, that the petition is denied without prejudice. Petitioners may renew their request for relief should the FERC not move in an expeditious manner.

---

**3.** *United Gas Pipe Line Co. v. Mobile Gas Serv. Corp.*, 350 U.S. 332, 76 S.Ct. 373, 100 L.Ed. 373 (1956); *F.P.C. v. Sierra Pac. Power Co.*, 350 U.S. 348, 76 S.Ct. 368, 100 L.Ed. 388 (1956).