Melvin KING, et al., Plaintiffs,

v.

OFFICE FOR CIVIL RIGHTS OF the UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, and Peter Chan, in his official capacity as Regional Manager of the Office for Civil Rights, Defendants.

Civil Action No. 07–10861–PBS.

United States District Court,
D. Massachusetts.

Aug. 26, 2008.

---

Laura Maslow–Armand, Lawyers Committee for Civil Rights Under Law, Mark W. Roberts, McRoberts, Roberts and Rainer LLP, Boston, MA, for Plaintiffs.

Anton P. Giedt, United States Attorney's Office, Boston, MA, for Defendants.

### MEMORANDUM AND ORDER

SARIS, District Judge.

Plaintiffs seek a writ of mandamus pursuant to the federal mandamus statute, 28

U.S.C. § 1361, compelling the Office for Civil Rights of the United States Department of Health and Human Services ("OCR") to conduct a prompt investigation of a discrimination complaint relating to the construction of a BioSafety laboratory ("Biolab") in Boston. Alternatively, Plaintiffs contend that OCR has unlawfully withheld or unreasonably delayed investigation pursuant to the Administrative Procedures Act ("APA"), 5 U.S.C. § 706($l$), and should be compelled to act. Defendants ("the government") moved to dismiss the suit on the ground that this Court lacks subject matter jurisdiction and that Plaintiffs failed to state a claim upon which relief can be granted. Plaintiffs then moved for summary judgment on the ground that OCR's investigation has been unreasonably delayed. A hearing was held on December 20, 2007, and post-hearing submissions have been filed. Now Plaintiffs have moved for entry of judgment which would order OCR to conduct an investigation and issue a decision within sixty (60) days after the issuance of the draft supplement to the final environmental impact statement. The government has proposed the timetable of ninety (90) days after issuance of the final supplement. After hearing, and a review of the submissions, I *DENY* the plaintiffs' motion for summary judgment and the plaintiffs' motions for entry of judgment. I *ALLOW* the government's motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) and dismiss the action without prejudice.

## BACKGROUND FACTS [1]

Plaintiffs are residents of the neighborhoods of Roxbury and the South End where a controversial laboratory ("Biolab") is being built by the National Institute of Allergy and Infectious Diseases, a component of the National Institutes of Health ("NIH"), in conjunction with Boston University. This laboratory will include a "BioSafety" Level 4 ("BSL–4") laboratory which will conduct research on the most dangerous biological agents, like Ebola. This will be the only Level 4 facility in the United States located in a densely populated urban neighborhood. According to Plaintiffs, the area is already overburdened by poor health and environmental pollution, and a disproportionate amount of environmentally hazardous sites and facilities. It has been designated by the state as an "Environmental Justice Community." The surrounding area is composed predominantly of minorities and economically disadvantaged or low-income residents. Three of the city's largest shelters for the hungry and homeless are located within five blocks of the site.

On July 11, 2005, Plaintiffs filed a discrimination complaint with OCR. The complaint alleges that the siting of the federally-funded Biolab has the effect of subjecting them to discrimination because of their race and national origin in violation of Title VI and its implementing regulations.

On December 9, 2005, NIH published the Final Environmental Impact State-

---

1. In addition to Plaintiff's petition, background information from the affidavits, declarations, and briefs submitted by the parties are also included to the extent that the information seems undisputed. Consideration of these materials does not automatically convert the defendants' 12(b)(1) and 12(b)(6) motions to dismiss into one for summary judgment. *See Dynamic Image Techs., Inc. v. United States*, 221 F.3d 34, 37 (1st Cir.2000) (stating that courts can consider extrinsic materials in a Rule 12(b)(1) motion to dismiss without converting it to a motion for summary judgment); *Watterson v. Page*, 987 F.2d 1, 3–4 (1st Cir.1993) (explaining that a court can look to matters of public record and "documents the authenticity of which are not disputed" without converting a Rule 12(b)(6) motion to dismiss to one for summary judgment).

ment ("FEIS") for the Boston Biolab. In its Record of Decision, issued on February 2, 2006, NIH decided to fund the Boston BSL–4 and concluded that while Environmental Justice Communities may experience temporary impacts, there will be no disproportionate effect on Environmental Justice communities during the operation of the laboratory. In May 2006, a complaint was filed in federal court (separate from the petition at issue here) alleging that the FEIS and project approval process failed to comply with the requirements of the National Environmental Policy Act ("NEPA"). *See Allen v. Nat'l. Insts. of Health,* No. 06–10877, 2006 WL 1726131 (D. Mass. filed May 18, 2006) (Saris, J.) (hereinafter *"Allen v. NIH "*). The plaintiffs in *Allen v. NIH* are seeking, *inter alia,* an injunction against further federal funding and construction of the laboratory.

A lawsuit was also filed in Massachusetts state court, where a Massachusetts Superior Court judge concluded that the environmental review was inadequate under the Massachusetts Environmental Policy Act. *See Ten Residents of Boston v. Boston Redev. Auth.,* No. 05–0109, 2006 WL 2440043 (Mass.Super. Aug. 2, 2006), *aff'd sub nom. Allen v. Boston Redev. Auth.,* 450 Mass. 242, 877 N.E.2d 904 (2007). Because that opinion ordered additional environmental analyses to be completed, the parties agreed to conduct supplemental analyses in the federal litigation as well. *See Allen v. NIH,* Docket No. 27. A supplemental document was released by NIH on August 23, 2007. *See Allen v. NIH,* Docket No. 45. However, in response to a critique of the document by the National Research Council in November 2007, NIH concluded that it needed to conduct additional analysis. The final supplemental report is now expected to be completed by April 30, 2009. *See Allen v. NIH,* Docket No. 53.

In the meantime, on April 18, 2006, nine months after having filed their complaint with OCR, Plaintiffs wrote to Peter Chan, the regional manager of OCR, contending that the agency had failed to comply with 45 C.F.R. § 80.7(c) requiring "prompt investigation" when a complaint is filed with OCR. On January 17, 2007, OCR notified Plaintiffs that it had decided to postpone a determination on the review of Plaintiffs' complaint until the resolution of the federal litigation in *Allen v. NIH.* Plaintiffs then initiated this litigation on May 4, 2007 (twenty-one months after they had filed their complaint with OCR), alleging that no investigation had taken place and no decision had been issued.

In its papers, the government maintains the position, articulated in OCR's January 2007 letter, that OCR will postpone a determination on its review of the administrative complaint pending resolution of the federal litigation in *Allen v. NIH.*

## DISCUSSION

### 1. Jurisdiction

The government contends that this Court lacks subject matter jurisdiction because OCR's decision to postpone the investigation of the administrative complaint is committed to unreviewable agency discretion under Section 701(a)(2) of the APA. *See* 5 U.S.C. § 701(a)(2) (exempting from judicial review "agency action[s] . . . committed to agency discretion by law" from judicial review).

■ The APA authorizes courts to compel agency action that is "unlawfully withheld or unreasonably delayed." *See* 5 U.S.C. § 706(*l*) ("Section 706(1)".) In *Norton v. Southern Utah Wilderness Alliance,* 542 U.S. 55, 124 S.Ct. 2373, 159 L.Ed.2d 137 (2004) ("*SUWA* "), the Supreme Court explained, "when an agency is compelled by law to act within a certain

time period, . . . a court can compel the agency to act, [even when] it has no power to specify what the action must be." 542 U.S. at 65, 124 S.Ct. 2373. Section 706(*l* ) suits can be maintained where there is "a clear, mandatory, non-discretionary duty to act." *Shawnee Trail Conservancy v. Nicholas,* 343 F.Supp.2d 687, 699 (S.D.Ill. 2004) (stating that this understanding of Section 706(1) suits was confirmed by the Supreme Court's holding in *SUWA* ).

■ Here, the agency regulations contain a clear, non-discretionary mandate that OCR conduct a "prompt investigation" when a complaint is filed. 45 C.F.R. § 80.7(c) ("The responsible Department official or his designee will make a prompt investigation whenever a . . . complaint . . . indicates a possible failure to comply with [the nondiscrimation requirements for programs or activities receiving Federal financial assistance]."). Accordingly, this Court has jurisdiction under Section 706(1) to determine whether OCR's action has been unreasonably delayed. *Cf. Tang v. Chertoff,* 493 F.Supp.2d 148, 154–156 (D.Mass.2007) (concluding that the court had jurisdiction, under 5 U.S.C. § 555(b) and 5 U.S.C. § 706(1), to consider whether a delay in adjudicating a status adjustment application was unreasonable).

### 2. *Slow TRAC*

■ The core issue is whether OCR's decision to postpone an investigation until the federal litigation has been completed (apparently through appeal) is an "unreasonable delay" in violation of 5 U.S.C. § 555(b) and 5 U.S.C. § 706(1).[2] *See* 5

U.S.C. § 555(b) (obligating an agency to conclude a matter presented to it "within a reasonable time"); 5 U.S.C. § 706(1) ("The reviewing court shall . . . compel agency action unlawfully withheld or unreasonably delayed."). Many courts rely on the so-called *TRAC* factors when assessing claims of agency delay. These multi-factored guidelines were first articulated by the D.C. Circuit and have been endorsed by the First Circuit. *See Towns of Wellesley, Concord, and Norwood, Mass. v. FERC,* 829 F.2d 275, 277 (1st Cir.1987) (applying the *TRAC* factors to petitioner's claims of unreasonable delay by federal agency); *see Telecomm. Research & Action Ctr. v. FCC,* 750 F.2d 70, 80 (D.C.Cir.1984) ("*TRAC* ") (articulating factors). The *TRAC* guidelines provide that:

> 1) a "rule of reason" governs the time agencies take to make decisions; 2) delays where human health and welfare are at stake are less tolerable than delays in the economic sphere; 3) consideration should be given to the effect of ordering agency action on agency activities of a competing or higher priority; 4) the court should consider the nature of the interests prejudiced by delay; and 5) the agency need not act improperly to hold that agency action has been unreasonably delayed.

*Town of Wellesley,* 829 F.2d at 277 (citing *TRAC,* 750 F.2d at 80).

The government argues that the basis of the administrative complaint—the risks associated with locating a BSL–4 laboratory in Boston to the surrounding community— overlaps substantially with the issues be-

---

**2.** Because the APA provides a remedy and jurisdiction, this Court need not separately address the request for the remedy of mandamus under 28 U.S.C. § 1361. *See Independence Mining Co., Inc. v. Babbitt,* 105 F.3d 502, 507 (9th Cir.1997) (electing to analyze the plaintiff's claim solely under the APA rather than under both the APA and the mandamus statute "[b]ecause the relief sought is

essentially the same" and noting that the Supreme Court has construed a claim seeking mandamus as essentially one for relief under Section 706 of the APA); *Conservation Law Found., Inc. v. Clark,* 590 F.Supp. 1467, 1472 (D.Mass.1984) ("Courts and commentators have found the scope of relief provided by [Section 706(1) ] to be the equivalent of that available under mandamus.").

ing litigated in *Allen v. NIH*.[3] It states that "a determinative factor in establishing a violation of Title VI in the environmental setting is the ability to isolate and prove adverse environmental health burdens disproportionately suffered by a protected class which are not shared by other parts of the community." (Mem. Supp. Gov't Defs.' Mot. to Dismiss 7, 20–21.) In addition, OCR must determine "whether the action is necessary to achieve a legitimate objective unrelated to race, color, or national origin," and if so, "whether there are available alternatives that would further the objective with a lesser disparate adverse impact." *Id.* at 7. The government contends that OCR "rationally concluded" that it would delay its investigation until after the completion of all environmental reviews and the resolution of related litigation. *Id.* at 21. The government argues that the petition fails to state a claim because, in its view, OCR has initiated a review of the complaint in accordance with 45 C.F.R. § 80.7(c) and properly postponed its decision pending the outcome of related environmental litigation. Therefore, according to the government, there has been no agency action that has been unlawfully withheld or unreasonably delayed under the APA.

■ Given that NIH is supplementing its analysis of the health risks at the laboratory with information from a blue ribbon scientific panel, it is reasonable for OCR to wait until the supplemental statement to the final environmental impact statement is issued to complete its investigation. The new scientific analyses, particularly as to the availability of alternatives and risks of release, will be relevant to OCR's investigation and decision. If, for example,

NIH states that there are no viable alternatives after a reasonable assessment or no significant risk, that conclusion is relevant to OCR's investigation and decision. A contrary conclusion would also be relevant, if not dispositive.

■ OCR's decision to wait until the conclusion of the federal litigation through appellate review to complete its investigation, though, is more troublesome because the standards that this Court will be applying under the National Environmental Policy Act, 42 U.S.C. §§ 4321 et seq. ("NEPA"), are not the same standards that OCR will examine. This Court will ask whether the agency fulfilled its duty under NEPA to take a "hard look" at the environmental consequences of the laboratory. *Dubois v. U.S. Dep't of Agric.*, 102 F.3d 1273, 1284 (1st Cir.1996) (holding that the APA supplies the standard for a court's review of a federal agency action under NEPA). In other words, even if this Court decides that NIH has complied with NEPA, OCR may still determine that there are available alternatives that would further NIH's objectives with a lesser disparate adverse impact.

OCR states that it can complete its investigation within ninety (90) days of the issuance of the *final* supplemental analyses. Plaintiffs challenge that timetable arguing that it should be sixty (60) days after the *draft* supplemental statement. Both parties' positions tie OCR's timetable to the supplemental process being conducted for the related federal and state litigation—a process which itself has generated disagreement between the parties.[4]

■ In light of the *TRAC* factors, I conclude that it is reasonable for OCR to

3. At the hearing, Plaintiffs asserted that their OCR complaint encompassed the entire project, including BSL–2 and 3 components. Defendants disputed this. Plaintiffs' complaint here has focused primarily on the BSL–4 component and a more expansive Title VI claim covering lower level labs has been

poorly developed in this Court at this stage of the proceedings. In any event, the reasoning here applies to lower level labs as well.

4. In its briefing in the related federal case, *Allen v. NIH*, the plaintiffs assert that the defendants NIH and Boston University have

issue a decision within ninety (90) days after NIH releases its final supplemental statement in April 2009. However, even if the agency's decision survives NEPA scrutiny, OCR has work to do. Under the *TRAC* factors, delays where human health and welfare are at stake are less tolerable than delays in the economic sphere. 750 F.2d at 80. Moreover, when considering the public interest, delaying a needed Biosafety Lab in order to complete an OCR investigation is also undesirable. If OCR fails to issue a decision within ninety (90) days after NIH's final supplemental statement, Plaintiffs may re-file and seek to compel agency action.

However, as of the date of this litigation, OCR action has not been unreasonably delayed.

### ORDER

Accordingly, Plaintiffs' Motion for Summary Judgment (Docket No. 21) is **DENIED**. Plaintiffs' Motion for Entry of Judgment (Docket No. 28) and Revised Motion for Entry of Judgment (Docket No. 31) are **DENIED**. The government's Motion to Dismiss (Docket No. 22) for failure to state a claim is **ALLOWED**. The Court dismisses the action without prejudice.

proposed a process that neither employs the proper terminology nor complies with the relevant Council on Environmental Quality ("CEQ") regulations. The plaintiffs take issue with the defendants' use of the term "final supplemental NEPA document." The document, according to the plaintiffs, is more properly termed a "supplemental statement" to a "final environmental impact statement." The terminology is important, the plaintiffs contend, because a "supplemental statement" triggers obligations for NIH not only to conduct a public notice and comment period (which the defendants have proposed), but also full interagency consultation, especially with the Environmental Protection Agency ("EPA"). In addition, the plaintiffs insist that the regulations require NIH to issue a new Record of Decision based on the supplemental information and analysis generated through the supplemental process. Anything less, the plaintiffs contend, would not only fall short of the regulatory requirements, but also amount to an improper *"post hoc* rationalization of NIH's existing decision." *Allen v. NIH*, Docket No. 54 at 3. I do not resolve this dispute here.