NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**DENNIS P. MCCHESKY,**

*Claimant-Appellant*

**v.**

**ROBERT A. MCDONALD, SECRETARY OF VETERANS AFFAIRS,**

*Respondent-Appellee*

---

2015-7089

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 14-3121, Judge William A. Moorman.

---

Decided: December 15, 2015

---

DENNIS P. MCCHESKY, Bohol, Phillipines, pro se.

JESSICA L. COLE, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent-appellee. Also represented by BENJAMIN C. MIZER, ROBERT E. KIRSCHMAN, JR., MARTIN F. HOCKEY; BRIAN D. GRIFFIN, CHRISTINA L. GREGG, Office of General Counsel, United Stated Department of Veterans Affairs, Washington, DC.

---

Before DYK, BRYSON, and WALLACH, *Circuit Judges.*

PER CURIAM.

Pro se appellant Dennis McChesky appeals the decision of the United Stated Court of Appeals for Veterans Claims ("Veterans Court"), denying his petition for writ of mandamus. For the reasons set forth below, we affirm.

BACKGROUND

Mr. McChesky served on active duty in the Navy from 1965 to 1968. In 2004, he filed a claim seeking service connection for hypertension. The Department of Veterans Affairs ("VA") denied his claim due to the absence of evidence establishing that the "condition began in service or developed to a compensable degree within a year from service discharge," Appellee's App. 81, a determination the Board of Veterans' Appeals ("Veterans' Board") upheld on appeal in 2008. *See In re Dennis P. McChesky*, Docket No. 06-25 266 (Bd. Vet. App. July 11, 2008) (Appellee's App. 69–77).

On further appeal, on January 25, 2010, the Veterans Court remanded to the Veterans' Board to search for more evidence. In turn, the Veterans' Board remanded to the Philippines Regional Office ("RO") in April 2010, directing the RO to: (1) contact the National Personnel Records Center ("NPRC") to obtain additional records reporting Mr. McChesky's blood pressure at the relevant times; (2) conduct a VA examination of Mr. McChesky to evaluate the origin of his hypertension; and (3) readjudicate his claim.

In an August 2010 VA examination, Mr. McChesky was diagnosed with hypertension. The examiner initially "opined that it was at least as likely as not that the Veteran's current hypertension was related to active service," because he "had borderline elevated blood pressure of 138/90 during [an] enlistment physical examination that could have progressed into the current hypertension." Appellee's App. 49. However, the following month, after Mr. McChesky's claims file was returned to the examiner, the examiner issued an addendum opinion concluding that, due to Mr. McChesky's "minimal service records available for review," it could not be determined whether

the enlistment blood pressure reading was aggravated by service. *Id.* The Veterans' Board found the examiner's initial conclusion was not supported by "a medical explanation" and determined that "another opinion should be obtained." *Id.* at 51–52.

The Veterans' Board also determined that, although the RO had requested some of Mr. McChesky's records from the NPRC, it had failed to request records from several sources specifically identified in the previous remand order. Moreover, the RO had not notified Mr. McChesky of the results of the record requests that it had initiated. The Veterans' Board again remanded to the RO, directing it to request relevant records via the NPRC "or any other appropriate service department office," to inform Mr. McChesky of the results of the search efforts, to submit Mr. McChesky's claims file to a VA medical examiner to opine on service connection of the hypertension, and to readjudicate the claim. *Id.* at 52–53.

The RO sought records pursuant to the remand order, but was again unsuccessful, and in August 2014 Mr. McChesky was notified accordingly. The following month, a VA medical opinion was issued in response to the remand order, but the examiner stated he "cannot resolve this issue [of service connection] without resort to mere speculation," because of "minimal pertinent service medical records available for review." *Id.* at 33 (capitalization omitted). The RO thereafter issued a Supplemental Statement of the Case ("SSOC") denying service connection for Mr. McChesky's hypertension.

Mr. McChesky then filed a petition for writ of mandamus[1] with the Veterans Court, asserting the VA was not proceeding in an expeditious manner. The Veterans

---

[1] In addition to the petition now at issue, Mr. McChesky filed two previous petitions for writs of mandamus. *See McChesky v. Shinseki*, No. 12-2199, 2012 WL 3192619 (Vet. App. Aug. 7, 2012) (denying a mandamus petition filed July 17, 2012); *McChesky v. Shinseki*, No. 11-3713, 2012 WL 135699 (Vet. App. Jan. 17, 2012) (dismissing as moot a mandamus petition filed December 8, 2011).

Court denied the petition in a single-judge order. Mr. McChesky then filed a motion requesting a panel decision by the Veteran's Court, asserting the single-judge order erroneously stated that VA medical examination reports had been prepared on August 28, 2014, and September 22, 2014, when in fact the September 22 report was from 2010, not 2014. *See McChesky v. Shinseki*, No. 14-3121 (Vet. App. Dec. 29, 2014) (Appellee's App. 1–4) ("Reconsideration Order"). The Veterans Court determined single-judge reconsideration was appropriate, reconsidered the petition for writ of mandamus, and issued a Reconsideration Order denying it. *Id.* Mr. McChesky's appeal to this court followed. We have jurisdiction to review decisions of the Veterans Court under 38 U.S.C. § 7292 (2012).

## DISCUSSION

### I. Jurisdiction and Standard of Review

This court's jurisdiction to review decisions of the Veterans Court is limited. By statute, this court has "exclusive jurisdiction to review and decide any challenge to the validity of any statute or regulation or any interpretation thereof . . ., and to interpret constitutional and statutory provisions." *Id.* § 7292(c). Unless a constitutional issue is presented, this court lacks jurisdiction to review either "(A) a challenge to a factual determination, or (B) a challenge to a law or regulation as applied to the facts of a particular case." *Id.* § 7292(d)(2). Despite this court's limited jurisdiction to review facts of a veteran's underlying claim, we have noted "[i]t is unlikely that [§ 7292(d)(2)] was intended to insulate from our review [the Veteran's Court's] decisions under the All Writs Act," 28 U.S.C. § 1651(a) (2012), i.e., the relevant law authorizing writs of mandamus. *Lamb v. Principi,* 284 F.3d 1378, 1381 (Fed. Cir. 2002).

Section 7292 further provides that this court

shall hold unlawful and set aside any regulation or any interpretation thereof (other than a determination as to a factual matter) that was relied upon in the decision of the [Veterans Court] that [this court] finds to be— (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accord-

ance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or in violation of a statutory right; or (D) without observance of procedure required by law.

38 U.S.C. § 7292(d)(1). We review legal determinations of the Veterans Court de novo. *Dixon v. Shinseki*, 741 F.3d 1367, 1373 (Fed. Cir. 2014). A denial by the Veterans Court of a petition for writ of mandamus may be reviewed when the decision "raises a non-frivolous legal question." *Beasley v. Shinseki*, 709 F.3d 1154, 1158 (Fed. Cir. 2013).

## II. Mandamus

### A. Legal Standard for Granting Petitions for Writs of Mandamus

In general, "[a] writ of *mandamus* may be used to compel an inferior tribunal to act on a matter within its jurisdiction, but not to control its discretion while acting, nor reverse its decisions when made." *Ex parte Burtis*, 103 U.S. 238, 238 (1880) (citation omitted); *see also Mandamus*, Black's Law Dictionary (10th ed. 2014) (explaining a writ of mandamus is a court's written order "compel[ling] performance of a particular act by a lower court or a governmental officer or body, usu[ally] to correct a prior action or failure to act"). Congress authorized the Supreme Court to issue writs of mandamus in An Act to Codify, Revise, and Amend the Laws Relating to the Judiciary, Pub. L. No. 61-475, § 234, 36 Stat. 1087, 1156 (1911), and authority for all federal courts to issue writs of mandamus is now found in 28 U.S.C. § 1651,[2] which Mr. McChesky cites as a principal basis for his claim, *see* Appellant's Br. 3, 4. Section 1651(a) states, in its entirety, that "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a).

---

[2] Section 1651 is commonly referred to as the "All Writs Act." *See, e.g., Cheney v. U.S. Dist. Ct.*, 542 U.S. 367, 378 (2004).

The Supreme Court has explained, in the context of § 1651(a), a court may grant a petition for writ of mandamus only if each of three conditions is satisfied:

First, the party seeking issuance of the writ must have *no other adequate means* to attain the relief he desires—a condition designed to ensure that the writ will not be used as a substitute for the regular appeals process. Second, the petitioner must satisfy the burden of showing that his right to issuance of the writ is *clear and indisputable.* Third, even if the first two prerequisites have been met, the issuing court, in the exercise of its discretion, must be satisfied that the writ is *appropriate under the circumstances.*

*Cheney*, 542 U.S. at 380–81 (emphases added) (internal quotation marks, citations, and brackets omitted). The Court has further noted "[t]he remedy of mandamus is a drastic one, to be invoked only in extraordinary situations." *Kerr v. U.S. Dist. Ct.*, 426 U.S. 394, 402 (1976) (citations omitted).

The burden of proving there are no other adequate means to attain relief rests with the party seeking a writ of mandamus, as does the burden of establishing that the right to issuance of the writ is clear and indisputable. *In re Genentech, Inc.*, 566 F.3d 1338, 1341 (Fed. Cir. 2009). Moreover, even where the first two conditions described in *Cheney* are satisfied, the issuance of a writ of mandamus under § 1651 is discretionary. *Kerr*, 426 U.S. at 403. Accordingly, we must determine whether the Veterans Court "abused its discretion or committed other legal error" in denying mandamus. *Lamb*, 284 F.3d at 1384.

### B. The Veterans Court Did Not Abuse Its Discretion or Commit Legal Error in Denying the Petition for Writ of Mandamus

Mr. McChesky first asserts the Veterans Court "did not invoke the 'All Writs ACT 28 U.S.C. ~1651(a).'" Appellant's Br. 3. However, the Veterans Court did consider § 1651, acknowledging in its single-judge Reconsideration Order that it "has the authority to issue extraordinary writs in aid of its jurisdiction pursuant to the All Writs Act, 28 U.S.C. § 1651(a)." Appellee's App. 3.

The Veterans Court set forth the relevant legal standard for issuing writs of mandamus, concluding that Mr. McChesky "has not satisfied his burden of demonstrating a clear and indisputable right to a writ of mandamus." *Id.* The Veterans Court also found that because "the RO is actively developing and adjudicating the claim," Mr. McChesky had not established that the VA had arbitrarily refused to act. *Id.*

Because it is apparent from the Veterans Court's Reconsideration Order that it did consider § 1651, Mr. McChesky's claim is best understood as challenging the Veterans Court's conclusion that the standard for issuing a writ of mandamus has not been satisfied. He asserts the VA engaged in "obvious stonewalling, delay, redundancy, etc. that points to the Veterans Affairs refusing to act." Appellant's Br. 4. In a supplemental filing, which we have treated as a Memorandum in Lieu of Oral Argument (CM/ECF Doc. No. 15, filed Nov. 13, 2015) ("Memorandum"), Mr. McChesky points out that twenty-three months elapsed between the first remand to the Veterans' Board in January 2010 (which then remanded to the RO in April 2010) and the date he filed his first petition for writ of mandamus in December 2011, and that the RO denied his claim five days after the mandamus petition was filed. Memorandum at 1–2. He similarly asserts that after the second remand to the RO (September 2012), twenty-four months elapsed before the RO issued an SSOC, and that the SSOC was issued ten days after the current petition (i.e., Mr. McChesky's third petition) for writ of mandamus was filed. *Id.* at 2; *see also* Appellee's Br. 10 (noting the ten-day period). From these and other facts, Mr. McChesky concludes "[m]y petitions . . . motivate the VA and [Veterans' Board] to act." *Id.*

The Veteran's Court did not abuse its discretion or commit legal error in denying the petition. Mandamus is an extraordinary remedy. *Kerr*, 426 U.S. at 402. Although certain periods between RO actions may have spanned twenty-three or twenty-four months, we cannot say "the delay amounts to an arbitrary refusal to act" rather than "the product of a burdened system." *Costanza v. West*, 12 Vet. App. 133, 134 (1999); *see also Lamb*, 284 F.3d at 1384 ("[E]xtraordinary writs cannot be used as

substitutes for appeals, even though hardship may result from delay . . . ." (quoting *Bankers Life & Cas. Co. v. Holland*, 346 U.S. 379, 383 (1953))). Given that the RO issued the SSOC following the filing of the Mr. McChesky's petition for writ of mandamus now under review, Mr. McChesky could then have responded to the SSOC, meaning that he had other adequate means of relief. *Cheney*, 542 U.S. at 380–81 ("[T]he party seeking issuance of the writ [must] have no other adequate means to attain the relief he desires . . . ." (second alteration in original) (internal quotation marks and citation omitted)).

Although Mr. McChesky asserts the VA is "refusing to act," Appellant's Br. 4, the record indicates the VA denied his claim in 2005, 2008, 2011, 2014, and 2015, *see* Appellee's App. 2, 16, 28, 70, 80. Given these denials and Mr. McChesky's request that this court "require the [Veteran's Court] to decide my case and give me 10% to 20% VA disability compensation," Mr. McChesky's complaint is primarily directed at the outcome of the VA's actions rather than its failure to act. Memorandum at 2. Whether the VA properly applied the law to the facts in this case, however, is not a matter within this court's jurisdiction. 28 U.S.C. § 7292(d)(2).

Mr. McChesky's assertion that the Veterans Court failed to apply the reasonable doubt doctrine as provided in 38 C.F.R. § 3.102 also cannot satisfy the standards for issuance of a writ of mandamus. *See* Appellant's Br. 3. That regulation states:

> When, after careful consideration of all procurable and assembled data, a reasonable doubt arises regarding service origin, the degree of disability, or any other point, such doubt will be resolved in favor of the claimant. By reasonable doubt is meant one which exists because of an approximate balance of positive and negative evidence which does not satisfactorily prove or disprove the claim. It is a substantial doubt and one within the range of probability as distinguished from pure speculation or remote possibility. It is not a means of reconciling actual conflict or a contradiction in the evidence. *Mere suspicion or doubt as to the truth of any statements submitted*, as distinguished from

impeachment or contradiction by evidence or known facts, is not justifiable basis for denying the application of the reasonable doubt doctrine if the entire, complete record otherwise warrants invoking this doctrine. The reasonable doubt doctrine is also applicable even *in the absence of official records*, particularly if the basic incident allegedly arose under combat, or similarly strenuous conditions, and is consistent with the probable results of such known hardships.

38 C.F.R. § 3.102 (2015) (emphases added). Mr. McChesky refers to the reasonable doubt doctrine as a means to explain the absence of blood pressure readings. *See* Appellant's Reply Br. 6 ("My sworn testimony answers the question why I don't have any blood pressure readings . . . . (38C.F.R. 3102 [sic] Reasonable doubt)."). That testimony, contained in an affidavit from 2006, is that at the time of Mr. McChesky's discharge physical in 1968, an assistant told him he "had high blood pressure and that [he] would receive [twenty] to [thirty] dollars a month and receive free medical." Appellee's App. 22. The affidavit also states that Mr. McChesky saw his doctor "go through [his] medical file and throw away maybe [two] or [three] papers and then another." *Id.* He argues in his brief that "[t]hese [discarded documents] were my blood pressure readings." Appellant's Br. 3.

These asserted facts do not satisfy the mandamus standard as set forth in *Cheney*. Whether the VA properly applied the reasonable doubt doctrine, or failed to apply it, is a matter than can be addressed in Mr. McChesky's response to the most recent SSOC. Therefore, there are "other adequate means" to assert this argument in pursuance of the relief Mr. McChesky seeks. *Cheney*, 542 U.S. at 380. To the extent Mr. McChesky asks this court to apply the reasonable doubt doctrine of 38 C.F.R. § 3.102 and "require the [Veteran's Court] to decide [his] case and give [him] 10% to 20% VA disability compensation," Memorandum at 3, we note that this court lacks jurisdiction to review either "(A) a challenge to a factual determination, or (B) a challenge to a law or regulation as applied to the facts of a particular case," 38 U.S.C. § 7292(d)(2).

CONCLUSION

For these reasons, the decision of the Veterans Court is

**AFFIRMED**

COSTS

Each party shall bear its own costs.