## MERAL SMITH, Appellant/Petitioner
### v.
## EMPLOYEES OF THE BUREAU OF CORRECTIONS, and RICK MULLGRAV, DIRECTOR OF THE BUREAU OF CORRECTIONS,[1]
### Appellees/Respondents

S. Ct. Civil No. 2015-0034

Supreme Court of the Virgin Islands

March 7, 2016

---

[1] Although this action was originally brought against Julius Wilson as the Director of the Virgin Islands Bureau of Corrections, Wilson is no longer in office. Accordingly, his successor in office, Rick Mullgrav, was automatically substituted as the nominal defendant, pursuant to Supreme Court Rule 34(c). See *Bertrand v. Mystic Granite & Marble, Inc.*, 63 V.I. 772 n.1 (V.I. 2015).

MERAL SMITH, St. Croix, USVI, *Pro se.*

KIMBERLY SALISBURY, ESQ., Assistant Attorney General, St. Thomas, USVI, *Attorney for Appellee Virgin Islands Bureau of Corrections.*

PAMELA R. TEPPER, ESQ., Solicitor General, St. Thomas, USVI, *Attorney for Appellee Rick Mullgrav.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice.*

## OPINION OF THE COURT

(March 7, 2016)

HODGE, *Chief Justice.* Meral Smith appeals from the Superior Court's February 24, 2015 order, which denied his petition for a writ of mandamus. For the reasons that follow, we affirm.

## I. BACKGROUND

Smith is presently an inmate at the Golden Grove Adult Correctional Facility in Kingshill, St. Croix. On July 5, 1973, Smith was convicted of eight counts of first-degree murder, two counts of robbery, and four counts of first-degree assault in the United States District Court of the

Virgin Islands.[2] He was sentenced to serve eight consecutive terms of life imprisonment with the possibility of parole on the first-degree murder counts with additional sentences imposed on the robbery and first-degree assault convictions.

On May 8, 2012, Smith filed an application for early parole with the Virgin Islands Bureau of Corrections pursuant to section 4601 of title 5 of the Virgin Islands Code. The Bureau of Corrections transmitted the application to its then-Director, Julius Wilson, on June 8, 2012. Just six days after Wilson received the application, the Bureau of Corrections notified Smith, by memorandum, that his application for parole was "returned unanswered" on June 11, 2012. In response, Smith then filed two inmate request forms with the Bureau of Corrections asking why his application for parole was returned unanswered. Smith received notification that his question could only be answered by "the parole board and the director respectively." (J.A. 10.)

On January 23, 2013, Smith filed a petition for writ of mandamus in the Superior Court, requesting that it order the Director of the Bureau of Corrections to consider his application for parole. The Superior Court dismissed the petition by order dated February 24, 2015, which prompted Smith to file a "Motion for Relief from Order," which was subsequently denied on March 30, 2015. Smith filed his timely notice of appeal on April 13, 2015. *See* V.I.S.Ct.R. 5(a)(1) ("[I]f the Government of the Virgin Islands or the United States of America or an officer or agency thereof is a party, the notice of appeal may be filed by any party within 60 days after such entry [of judgment]").

---

[2] Prior to January 1, 1994, the Superior Court lacked jurisdiction to hear first-degree murder cases, and such matters were tried in the District Court. *See* Former 4 V.I.C. § 76(b) (1993). As we have previously explained:

> In 1994, the Revised Organic Act of 1954 had been implemented to include the sweeping 1984 Amendments, which authorized the local legislature to confer expanded jurisdiction on the [Superior] Court. The 1984 Amendments were not self-executing . . . . Thus, local legislation, effective January 1, 1994, codified the transfer of original jurisdiction for all criminal matters, subject to concurrent jurisdiction with the District Court, to the [Superior] Court.

*Simon v. Joseph*, 59 V.I. 611, 614 n.4 (V.I. 2013) (quoting *People v. Dowdye*, 48 V.I. 45, 64-65 (V.I. Super. Ct. 2006)).

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

This Court has appellate "jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." 4 V.I.C. § 32(a). Because the Superior Court's February 24, 2015 order adjudicated all of Smith's claims, it constitutes a final appealable judgment within the meaning of section 32(a). *Haynes v. Ottley*, 61 V.I. 547, 557 (V.I. 2014) (citing *Weary v. Long Reef Condo. Ass'n*, 57 V.I. 163, 165 (V.I. 2012)).

We review the Superior Court's factual findings for clear error and exercise plenary review over its legal determinations. *Francis v. People*, 56 V.I. 370, 379 (V.I. 2012).

### B. Mandamus Relief

■ A writ of mandamus is an extreme remedy that "should be granted only in extraordinary circumstances." *In re People of the V.I.*, 51 V.I. 374, 382 (V.I. 2009) (citing *In re LeBlanc*, 49 V.I. 508, 516 (V.I. 2008)). To obtain a writ of mandamus, "a petitioner must establish that his right to the writ is clear and indisputable" and prove "that [he] has no other adequate means to attain the desired relief." *Id.* (citing *LeBlanc*, 49 V.I. at 517); *Hansen v. O'Reilly*, 62 V.I. 494, 525 (V.I. 2015). But, even if these two prerequisites are met, "the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances." *Id.* at 526 (internal quotation marks omitted).

■ We conclude that Smith has failed to establish that his right to a writ of mandamus is clear and indisputable. "[A] party possesses a 'clear and indisputable' right when the relief sought constitutes a specific ministerial act, *devoid of the exercise of judgment or discretion*." *In re People*, 51 V.I. at 387 (internal quotation marks and citation omitted) (emphasis added). Smith maintains that he possesses a clear and indisputable right to a response from either the parole board or the Director of the Bureau of Corrections with respect to his application for parole.

■ We disagree. Although Smith argues that his due process rights were violated as a result of the Director's return of his application with no answer, there remains "no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." *Greenholtz v. Inmates of Nebraska Penal & Corr. Complex*,

442 U.S. 1, 7, 99 S. Ct. 2100, 60 L. Ed. 2d 668 (1979). Thus, the fact that a jurisdiction provides a mechanism for parole does not mean that a person automatically obtains a right to be released. A right for parole review or eligibility may be created, however, by virtue of a state or territorial statute. *See Board of Pardons v. Allen*, 482 U.S. 369, 381, 107 S. Ct. 2415, 96 L. Ed. 2d 303 (1987) (finding that a right to be paroled existed because of the statute's use of mandatory language); *Greenholtz*, 442 U.S. at 12 (same); *cf. Jago v. Van Curen*, 454 U.S. 14, 20-21, 102 S. Ct. 31, 70 L. Ed. 2d 13 (1981) (finding no right to be paroled where the statute was discretionary). That interest may arise when a parole statute sufficiently restricts the ability of a parole board to deny parole. *Allen*, 482 U.S. at 377-78. For example, in *Allen*, the parole statute provided that the board "shall release on parole" all inmates eligible for parole. *Id.* at 376, 378. Likewise, in *Greenholtz* the parole statute mandated that whenever the parole board considered releasing an offender eligible for parole, it "shall order his release" unless it finds that his release should be deferred due to one of four listed factors. 442 U.S. at 11. In both of those statutes, the use of mandatory language resulted in limiting the board's discretion in a manner that was sufficient for the Court to conclude that a right to parole had been created. *See Allen*, 482 U.S. at 378; *Greenholtz* 442 U.S. at 12.

■ Thus, to determine whether the Director breached a ministerial duty to Smith, this Court must turn to the language of the Virgin Islands parole statute. That statute provides, in pertinent part, that

> Except for a prisoner sentenced to a term of life imprisonment without parole, every prisoner confined in any penitentiary, jail or prison for a violation of the Virgin Islands law for a definite term or terms of over 180 days or for the term of his natural life, whose record of conduct shows that he has observed the rules of the institution in which he is confined, ***upon recommendation of the Director of the Bureau of Corrections*** supported by the recommendation of a psychiatrist and/or psychologist, ***may be released on parole*** after serving one-half of such term or terms or after serving 15 years of a life sentence or of a sentence of 30 years or more or after serving the minimum sentence required by law, whichever is greater; Provided, however, That the Board of Parole, ***in its discretion*** by at least a two-thirds affirmative vote of all its members, ***upon recommendation by the Directors of the Bureau of***

*Corrections*, supported by the recommendation of a psychiatrist and/or psychologist, is authorized to fix an earlier eligibility date for the release of a prisoner on parole after serving one-third of his term or terms or after serving 10 years of a life sentence or of a sentence of 30 years or more.

5 V.I.C. § 4601 (emphases added). Nothing in this statute provides that any inmate possesses a right to parole, whether early or otherwise. On the contrary, the statute expressly provides that an inmate may not even be considered for parole without the recommendation of the Director of the Bureau of Corrections. It is well-established that a favorable recommendation from a public official is not a purely ministerial act, but one that requires discretion and judgment. *See, e.g., Gray v. Stouffer*, No. Civ. A. CCB-05-569, 2005 WL 1367088, at *2 (D. Md. June 7, 2005) (unpublished); *Burch v. Moulton*, 980 So. 2d 392, 399 (Ala. 2007); *Arsenault v. Mayor of Taylor*, 98 Mich. App. 767, 296 N.W.2d 351, 353 (1980). Moreover, the parole statute neither sets forth any factors that must guide the Director's exercise of his discretion, nor requires that the Director provide an inmate with an explanation of the reasons for not providing a favorable recommendation. *See, e.g., Gilmore v. Parole Board*, 247 Mich. App. 205, 635 N.W.2d 345, 356-57 (2001) (holding that, in absence of statutory authority, an inmate is not entitled to a written explanation for failure to proceed to next step in parole process); *Jakaj v. Combes*, No. 2:12-cv-475, 2013 U.S. Dist. LEXIS 28269, at *9 (W.D. Mich. Mar. 1, 2013) (unpublished) (rejecting argument that inmate possesses a constitutional right to an interview or written explanation for the denial of parole).

█ In this case, the Director of the Bureau of Corrections, by returning Smith's early parole application unanswered, clearly exercised his discretion to not recommend him for parole. Since section 4601 is a discretionary statute evincing that early parole is a privilege and not a right, we conclude that Smith failed to establish that his right to a writ of mandamus is clear and indisputable.[3] *See In re Morton*, 56 V.I. 313, 319 (V.I. 2012). Consequently, the Superior Court committed no error when it denied his petition for a writ of mandamus.

---

[3] Because Smith has failed to establish that he possesses a clear and indisputable right to have the Director of the Bureau of Corrections recommend him for parole — or even a clear and indisputable right to an explanation from the Director — we decline to consider any of the remaining mandamus factors as part of this appeal. *See LeBlanc*, 49 V.I. at 517.

## III. CONCLUSION

The United States Supreme Court has held that a prisoner has no constitutional right to release on parole. Moreover, Virgin Islands statutory law provides only for discretionary parole, with no inmate eligible for parole until the Director of the Bureau of Corrections has first issued a favorable recommendation. Because such a recommendation is a discretionary, rather than a ministerial act, Smith cannot establish that his right to mandamus relief is clear and indisputable. Accordingly, we affirm the Superior Court's February 24, 2015 order dismissing his petition seeking a writ of mandamus.

SWAN, *Associate Justice*, concurring in part and dissenting in part. Appellant Meral Smith (hereinafter "Smith"), *pro se*, appeals from the Virgin Islands Superior Court's denial of his petition for a writ of mandamus. For the reasons elucidated below, I concur in the result reached by the majority in this appeal, but write separately to explain a different rationale for reaching this conclusion.

## I. FACTS AND PROCEDURAL HISTORY

On July 5, 1973, Smith and four others were convicted of eight counts of first degree murder, two counts of robbery and four counts of first degree assault after trial in the United States District Court of the Virgin Islands. The court sentenced Smith to serve eight consecutive terms of life imprisonment on the eight first degree murder counts in accordance with 14 V.I.C. § 923(a). The court further imposed sentences on the robbery and on the first degree assault convictions to be served concurrently with the murder convictions.[1]

On May 8, 2012, Smith filed an application with the Virgin Islands Bureau of Corrections (hereinafter "VIBOC") seeking early parole. In his application, he asserted that he completed one-third of the time he was sentenced to serve for robbery and first-degree assault, served 10 years of a sentence of over 30 years, and served 10 years of a life sentence. Smith submitted his application for early parole consideration to Julius Wilson (hereinafter "Wilson"), then the director of VIBOC, on June 8, 2012. In

---

[1] The sentence, among other issues in this case, was appealed to the United States Court of Appeals for the Third Circuit, which affirmed the convictions. *See Gov't of the V.I. v. Gereau*, 16 V.I. 87, 87 (V.I. 1975).

a memorandum dated June 14, 2012, Debra K. Liburd, a reentry parole coordinator at VIBOC, notified Smith that his application for early parole was "returned unanswered" on June 11, 2012.

In response, Smith filed an inmate request form dated June 19, 2012 to query the reason VIBOC returned his early parole application unanswered. When Wilson failed to respond, Smith submitted another inmate request form dated August 17, 2012 to Clifford Cuffy, a VIBOC employee designated "CMP," seeking an explanation regarding his long outstanding application for early parole. Cuffy responded in an undated memorandum, informing Smith that he could not provide the explanation Smith sought because the matter of Smith's application "is out of [his] jurisdiction."

On January 23, 2013, Smith filed a petition for writ of mandamus in the Superior Court of the Virgin Islands to address his unanswered early parole application. In an order dated July 2, 2013, the Superior Court ordered Wilson to respond to the petition within 30 days, and that a failure to respond would result in the court imposing sanctions. A review of the record does not disclose that Wilson responded to the court's order. Smith then filed a "Motion for Decision on Record of the Case" dated August 27, 2013, a "Motion for Status Report and Reassignment of This Case" dated November 15, 2013, and a "Motion for Expedited Decision" dated August 18, 2014.

In an order dated February 24, 2015, the Superior Court dismissed Smith's petition for a writ of mandamus and ordered that the case be closed. On March 6, 2015, Smith filed a "Motion for Relief From Order," which the Superior Court denied in an order dated March 30, 2015. Smith immediately filed a notice of appeal with this Court on April 13, 2015.

## II. JURISDICTION

"The Supreme Court [has] jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court." 4 V.I.C. § 32(a). Because the Superior Court's February 24, 2015 and March 30, 2015 orders resolved all claims between the parties, they constitute final and appealable judgments within the meaning of section 32(a). *See Weary v. Long Reef Condo. Ass'n*, 57 V.I. 163, 165 (V.I. 2012) (citing *Matthew v. Herman*, 56 V.I. 674, 677 (V.I. 2012)); *see also V.I. Gov't Hosps. & Health Facilities Corp. v. Gov't of the V.I.*, 50 V.I. 276, 279 (V.I. 2008) ("A final judgment, decision, or order is one that ends the

litigation on the merits and leaves nothing to do but execute the judgment.") (internal quotation marks, citation and alteration omitted).

## III. ISSUES AND STANDARD OF REVIEW

Smith raises the issues for appeal in a disjointed fashion. Accordingly, a review of the procedural posture of the case and the Superior Court's rulings are indispensable to proper framing of those issues.

Smith filed a petition for a writ of mandamus with the Superior Court on January 23, 2013. In his petition, Smith stated that he is seeking "[e]arly parole and *[s]tatutory clarification of his Official Parole Eligibility Status' under the Old Law provision within the realm of the Virgin Islands Law under V.I.C. Title 5 Section 4601, which unambiguously states and prescribes that he Plaintiff-Petitioner] is 'eligible for parole after serving the first ten (10) years of his [Plaintiff-Petitioner's] sentence.'* " (Emphasis added). The Superior Court denied Smith's request in an order dated February 24, 2015, finding "no evidence to support a finding that the Director's recommendation is mandatory, nor that he has the requisite recommendations from a psychiatrist or psychologist to support a recommendation by the Director."

In response, Smith filed a "Motion for Relief From Order" dated March 4, 2015, in which he primarily contended that "[t]he [Superior C]ourt has misconstrued, overlooked, and/or misrepresented petitioner's legal claims." In his attempt to clarify the issue, Smith asserted that "[t]he issue is that petitioner met the criteria and he filed the appropriate form seeking early parole, therefore the Director was required by law and BOC Policies, Rules and Regulations to give a written response/reply to the petitioner's request." In his understanding of 5 V.I.C. § 4601, Smith stated that "[e]ven the court's February 25, 2015 ORDER p. 3 supports petitioner's legal claim that Section 4601-2 of Title 5 of the Virgin Islands Rules and Regulations provides: once the above requirements have been met, the application for parole shall be considered by the parole board" and that "[s]hall be considered is a mandatory act." The Superior Court also denied this motion.

Here, Smith posits the issues as follows: "[w]hether the administrative process and procedures used by the respondents in deciding appellant's early parole application filed May 8, 2012 with attachments, meets constitutional and statutory due process requirements, under the Fourteenth amendment and Title 5 V.I.C. § 4601 et. seq. [and w]hether the

superior correctly follow[ed] the rules of civil procedure[ ] and used the correct legal standards with its fact-finding[ ] and conclusions of law in its ORDERS issued February 24, 2015 and March 30, 2015." (Appellant's Br. at 1.)

Smith is a *pro se* litigant, and this Court's practice is to "give[ ] *pro se* litigants greater leeway in dealing with matters of procedure and pleading." *Joseph v. Bureau of Corrs.*, 54 V.I. 644, 650 (V.I. 2011) (citing *Dennie v. Swanston*, 51 V.I. 163, 169 (V.I. 2009)). "[W]hen a litigant chooses to represent himself, it is the duty of the . . . court to insure fairness, allowing reasonable accommodations for the pro se litigant so long as no harm is done an adverse party." *Bernhardt v. Bernhardt*, 51 V.I. 341, 352 n.8 (V.I. 2009) (quoting *Bego v. Bego*, 177 W. Va. 74, 350 S.E.2d 701, 703 (1986) (emphasis omitted). Importantly, in reviewing the record, this Court should be mindful that a pleading "filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (internal quotations marks and citations omitted). Therefore, I will address the issue of Smith's eligibility for early parole and whether he had a clear right to receive a recommendation from the Director.

This Court exercises plenary review over all issues of statutory construction. *V.I. Conservation Soc'y, Inc., v. Golden Resorts, LLP*, 55 V.I. 613, 619 (V.I. 2011) (citing *V.I. Pub. Serv. Comm'n v. V.I. Water & Power Auth.*, 49 V.I. 478, 483 (V.I. 2008)).

## IV. DISCUSSION

### A. Smith Has No Adequate Means to Attain the Relief Sought.

Smith sought a writ of mandamus from the Superior Court to compel Wilson to recommend his early parole to the Parole Board. In his petition before the Superior Court judge, Smith argued that his due process rights were violated because he was not scheduled for an early parole hearing before the Parole Board, despite having served more than 40 years of his life sentences. Smith also asserted that because the opportunity to be heard on his parole request was denied him, he has no other adequate remedy available to him for relief.

The Superior Court denied the petition based on its application of 5 V.I.C. § 4601, and Smith perfected a timely appeal. The Court of Appeals

for the Federal Circuit opined in a 2015 decision that because the lower court has discretion under *Cheney v. U.S. Dist. Court*, 542 U.S. 367, 380-81, 124 S. Ct. 2576, 159 L. Ed. 2d 459 (2004) whether to grant the writ, the appellate issue is to "determine whether the [lower court] abused its discretion or committed other legal error" in denying mandamus. *McChesky v. McDonald*, 635 Fed. Appx. 882, 885 (Fed. Cir. 2015) (unpublished) (citing *Lamb v. Principi*, 284 F.3d 1378, 1384 (Fed. Cir. 2002)). As explicated below, Smith has no adequate means to attain the relief sought.

## B. Smith Has No Due Process Claims Under the Virgin Islands' Parole Statute.

"The requirements of procedural due process apply only to the deprivation of interest encompassed by the Fourteenth Amendment's protection of liberty and property." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 569, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972). "Liberty from bodily restraint always has been recognized as the core of the liberty protected by the Due Process Clause from arbitrary governmental action." *Greenholtz v. Inmates of Nebraska Penal & Corr.*, 442 U.S. 1, 18, 99 S. Ct. 2100, 60 L. Ed. 2d 668 (1979) (Powell, J., concurring in part and dissenting in part). Therefore, the implication of a protected interest of liberty or property triggers the Due Process Clause of the Fourteenth Amendment. However, "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence [because] the conviction, with all its procedural safeguards, has extinguished that liberty right: Given a valid conviction, the criminal defendant has been constitutionally deprived of his liberty." *Id.* at 7 (quoting *Meachum v. Fano*, 427 U.S. 215, 224, 96 S. Ct. 2532, 49 L. Ed. 2d 451 (1976)) (internal alterations omitted); *see also Josiah v. Farrelly*, 28 V.I. 104, 115-16 (V.I. Super. Ct. 1993).

Importantly, the United States Constitution does not mandate that a state provide a system of parole or parole release for its inmates. More succinctly, "the mere presence of a state parole system does not automatically create a protected liberty interest in being paroled because there is no constitutional or inherent right to parole." *Id.* at 110-11 (quoting *Dock v. Latimer*, 729 F.2d 1287, 1290 (10th Cir. 1984)) (internal quotation marks omitted). The Supreme Court in *Greenholtz* stated that in reviewing a contention that a state statute "creates a legitimate

expectation of parole, invoking due process protections" and "whether [a] state statute provides a protectible [sic] entitlement must be decided on a case-by-case basis" based on an examination of the statutory provisions. 442 U.S. at 9, 12; *see also Parker v. Corrothers*, 750 F.2d 653, 655 (8th Cir. 1984); *Evans v. Dillahunty*, 662 F.2d 522, 524 (8th Cir. 1981).

In determining whether a statute creates a protected liberty interest in parole, the court must determine whether the statute "contain[s] particularized substantive standards or criteria which significantly guide parole decisions . . . [and whether] the statute use[s] mandatory language." *Dace v. Mickelson*, 816 F.2d 1277, 1279 (8th Cir. 1987) (citation and internal quotation marks omitted). A statute containing particularized substantive standards creates a protected liberty interest in parole because "particularized substantive standards . . . are specific, objective, measurable criteria, such as length of time served, prior criminal history, seriousness of the offense, any disciplinary reports, and existence of any detainers filed against the inmate" that place substantive restrictions on the parole board's discretion. *Id.* at 1280. Crucially, if the parole board "is not required to base its decisions on objective and defined criteria, but instead can deny the request[ed] relief for any constitutionally permissible reason or for no reason at all, the State has not created a constitutionally protected liberty interest." *Id.* at 1279 (quoting *Olim v. Wakinekona*, 461 U.S. 238, 249, 103 S. Ct. 1741, 75 L. Ed. 2d 813 (1983)) (internal quotation marks omitted).

Significantly, the United States Supreme Court has also "explained that the absence or presence of mandatory language in a parole statute determines whether a liberty interest is created." *Josiah*, 28 V.I. at 111 (citing *Greenholtz*, 442 U.S. at 12); *see also Board of Pardons v. Allen*, 482 U.S. 369, 376-78, 107 S. Ct. 2415, 96 L. Ed. 2d 303 (1987). Mandatory statutory schemes creating a reasonable expectancy of entitlement to parole contain words such as "shall" and "must." *Greenholtz*, 442 U.S. at 12 (citing *Wolff v. McDonnell*, 418 U.S. 539, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974)); *see also Allen*, 482 U.S. at 377-79 & n.10. In contrast, "statutes which do not mandate a presumption of parole release do not create a protected statutory entitlement to parole on which an inmate can advance a due process claim." *Josiah*, 28 V.I. at 111 (citing *Wagner v. Gilligan*, 609 F.2d 866, 867 (6th Cir. 1979)). Statutes authorizing discretionary parole release determinations do not invoke the Fourteenth Amendment Due Process Clause. *See Greenholtz*, 442 U.S. at

12. Moreover, under discretionary parole statutes, an inmate becomes eligible for parole when he satisfies the prerequisites for parole but nothing mandates that parole be automatically granted.

Importantly, in this case, the unambiguous language of 5 V.I.C. § 4601 eschews using words which indicate that Smith has a right to be paroled. Whether an inmate has a liberty or property interest in parole warranting due process protection is dependent upon whether the legislation creating a parole system uses "mandatory" or "discretionary" language. *Josiah*, 28 V.I. at 110 (citing *Greenholtz*, 442 U.S. at 12). The language in section 4601 employs discretionary terms such as "may be released on parole" and "the parole board in its discretion." The statute's use of "discretionary" rather than "mandatory" language disavows any suggestion that Smith has a right to be paroled. Smith's opportunity to seek parole is a privilege — and not a right — as is evident in the unambiguous language of the local statute that only provides for discretionary parole. *See* 5 V.I.C. § 4601. Having established that 5 V.I.C. § 4601 is a discretionary parole statute that does not automatically grant an inmate a protectable interest in parole or create a legitimate expectation of parole, I will now examine whether Smith has met the prerequisites to make him eligible for consideration for early parole.

## C. Smith's Conviction of Eight Consecutive Life Sentences Makes Him Ineligible for Early Parole Consideration.

The issue of Smith's eligibility for the relief he seeks — early parole — is dispositive of this appeal. Smith argues that he submitted his early parole application to VIBOC "after years of debates, preparation and verbal agreements made by [VIBOC's] director, Julius Wilson, [VIBOC's] warden Basil Richards and others, [who] agreed and approved of [Smith] being put up for early parole consideration." To buttress his argument, Smith states that he filed the early parole application based on these "verbal agreements and approval[s]." (Appellant's Br. 2.)

The court record confirms that Smith was sentenced in accordance with 14 V.I.C. § 923(a), which then provided that: "Whoever commits murder in the first degree shall be imprisoned for life." Additionally, Smith's eligibility for parole is governed by 5 V.I.C. § 4601, which states that:

> Except for a prisoner sentenced to a term of life imprisonment without parole, *every prisoner confined in any penitentiary, jail or prison for*

*a violation of the Virgin Islands law* for a definite term or terms of over 180 days or *for the term of his natural life, whose record of conduct shows that he has observed the rules of the institution in which he is confined, upon recommendation of the Director of the Bureau of Corrections supported by the recommendation of a psychiatrist and/or psychologist, may be released on parole after serving one-half of such term or terms or after serving 15 years of a life sentence* or of a sentence of 30 years or more or after serving the minimum sentence required by law, whichever is greater; Provided, however, That the Board of Parole, in its discretion by at least a two-thirds affirmative vote of all its members, upon recommendation by the Directors of the Bureau of Corrections, supported by the recommendation of a psychiatrist and/or psychologist, is authorized to fix an earlier eligibility date for the release of a prisoner on parole after serving one-third of his term or terms or after serving 10 years of a life sentence or of a sentence of 30 years or more.

(Emphasis added). The Virgin Islands Rules and Regulations provision implementing this statute further states that:

Once the above requirements have been met, the application for parole shall be considered by the Parole Board. Recommendation by the Board for the paroling of a prisoner may be made if appears to the Board, from a written report by proper officers of the inmate's place of confinement or upon his application, that there is a reasonable probability that the prisoner can remain on parole without violating any law, local or otherwise, and if, in the opinion of the Board, his release is not incompatible with the welfare of society or the members of the community.

5 V.I.R. & R. § 4601-2(a). Here, Smith was sentenced to serve eight consecutive terms of life imprisonment. Because Smith's sentences did not include a term of life imprisonment without parole, he must serve a minimum of 80 years before he becomes eligible for parole by operation of 5 V.I.C. § 4601. Accordingly, Smith has not fulfilled the eligibility requirements for parole.

When interpreting a statute, we start with the plain language. There is a presumption that legislative bodies express their intent through the ordinary meaning of the language of the statute; therefore, statutory

interpretation always begins with an analysis of the plain text of the statute. *Haynes v. Ottley*, 61 V.I. 547, 561 (V.I. 2014); *Bryan v. Fawkes*, 61 V.I. 416, 462 (V.I. 2014); *Rohn v. People*, 57 V.I. 637, 646 n.6 (V.I. 2012); *Murrell v. People*, 54 V.I. 338, 352 (V.I. 2010); *Rosenberg v. XM Ventures*, 274 F.3d 137, 141 (3d Cir. 2001). *See King v. Burwell*, 135 S. Ct. 2480, 2489, 192 L. Ed. 2d 483 (2015). Accordingly, [w]here the statutory language is plain and unambiguous, further inquiry is not required." *Rosenberg v. XM Ventures*, 274 F.3d 137, 141 (3d Cir. 2001). *See In re L.O.F.*, 62 V.I. 655, 661 (V.I. 2015); *In re Reynolds*, 60 V.I. 330, 334 (V.I. 2013); *Kelley v. Gov't of the V.I.*, 59 V.I. 742, 745 (V.I. 2013); *Zuni Pub. Sch. Dist. No. 89 v. Dep't of Educ.*, 550 U.S. 81, 93, 127 S. Ct. 1534, 167 L. Ed. 2d 449 (2007) ("[I]f the intent of [the legislative body] is clear and unambiguously expressed by the statutory language at issue, that would be the end of our analysis."); *Marx v. General Revenue Corp.*, 133 S. Ct. 1166, 1172, 185 L. Ed. 2d 242 (2013).

The parole statute is explicit that the prisoner must serve "10 years of a life sentence." The statute does not state that a prisoner must serve 10 years for all combined life sentences. The use of the article "a" and the use of the singular word "sentence" means that each life sentence must be treated individually and distinct from all other life sentences imposed in the same case.

Undeniably, the sentencing court certainly knew the difference between a consecutive sentence and a concurrent sentence. It is noteworthy that the sentencing court imposed *concurrent* sentences on the four first degree assault charges. Consequently, when the trial court imposed *consecutive* sentences for each first degree murder conviction, the court intended for each first degree murder conviction to have its own separate and distinct 10 years of minimum service for parole purposes, making eligibility for parole a combined period of a minimum of 80 years for all murder convictions, and not 10 or 15 years as Smith avers. Accordingly, Smith is not eligible for parole.

It is also noteworthy that section 4601 has two provisions triggering possible parole consideration after two distinct time periods — 10 and 15 years — which depends on the circumstances upon which parole is requested. Crucially, if the sentencing court had intended for Smith to be eligible for parole after an abbreviated period of 10 or 15 years under its sentence and commitment order upon convictions for taking the lives of eight victims, the sentencing court could have simply ordered all the life

sentences to be served concurrently with each other. However, this sentencing alternative was summarily rejected by the sentencing court, which opted instead for a protracted period of imprisonment on the first degree murder convictions.

The conclusion that the Superior Court made a conscious and binding determination on this issue is underscored by the fact that the sentencing court — then the District Court of the Virgin Islands — had a variety of mathematical options available to it in adroitly crafting the life sentences. For example, the trial court could have imposed two consecutive life sentences to be served with six concurrent sentences, or equally, four consecutive sentences and four concurrent sentences. Yet, the trial court punctiliously and meticulously imposed eight consecutive sentences; therefore, the irrefutable conclusion is that eight consecutive sentences were intended to be imposed. More succinctly, the court intended to impose a life sentence on each of Smith's murder convictions. Therefore, the District Court effectively intended that Smith, who would be required to serve a minimum of 80 years of incarceration on the sentences imposed, would never become eligible for parole. This sentence reflects the same judgment about the severity of the crimes that led to the Legislature's adoption of the "life imprisonment without parole" provision, which was added in 1974 after Smith was convicted and sentenced. *See* Act No. 3560, § 2 (V.I. Reg. Sess. 1974).

A consecutive sentence is defined as "two or more sentences of jail time to be served in sequence." BLACK'S LAW DICTIONARY 1485 (9th ed. 2009). For example, if a defendant receives consecutive sentences of 25 years and 10 years, the total amount of time to be served is 35 years. In contrast, a concurrent sentence is defined as "two or more sentences of jail time to be served simultaneously." *Id.* For example, if a defendant receives concurrent sentences of 25 years and 10 years, the total amount of time to be served is 25 years. Therefore, Smith's contention regarding the amount of time he must serve to become eligible for parole is specious. Moreover, Smith's theory that he will have to first die and return to life each time in order to be eligible for parole is outlandish and preposterous. The "life sentence" terms addressed in the statute pertains to the length of the sentence. It has nothing to do with dying and returning to life in order to complete fulfillment for having served a life sentence.

Consequently, Smith has failed to satisfy his burden of showing that his right to the issuance of a writ of mandamus is "clear and indisputable,"

because he is not eligible for parole based on the consecutive nature of the sentences imposed for his murder convictions. Therefore, the act of filing a petition for early parole with the parole board on Smith's behalf would simply be a superfluous act, which the board can simply ignore. Moreover, after serving 80 years, he will certainly become eligible to petition for parole. Accordingly, Smith has not demonstrated that his right to the issuance of a writ is clear and indisputable and thus the Superior Court did not err, much less commit reversible error, in denying his mandamus application.

## V. CONCLUSION

For the reasons elucidated above, I concur in part and dissent in part from the decision of the Court in this case.