# United States Court of Appeals for the Federal Circuit

---

**JOHN MARTIN,**
*Claimant-Appellant*

v.

**PETER O'ROURKE, ACTING SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

--------------------------------------------------------------------------------

**WILLIAM RHODES,**
*Claimant-Appellant*

v.

**PETER O'ROURKE, ACTING SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

--------------------------------------------------------------------------------

**EUGENIA MOTE,**
*Claimant-Appellant*

v.

**PETER O'ROURKE, ACTING SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

--------------------------------------------------------------------------------

**THOMAS MEISSGEIER,**
*Claimant-Appellant*

**v.**

**PETER O'ROURKE, ACTING SECRETARY OF
VETERANS AFFAIRS,**
*Respondent-Appellee*

------------------------------------------------------------------------------------

**HUGH D. MATTHEWS,**
*Claimant-Appellant*

**v.**

**PETER O'ROURKE, ACTING SECRETARY OF
VETERANS AFFAIRS,**
*Respondent-Appellee*

------------------------------------------------------------------------------------

**BETTY D. SCYPHERS,**
*Claimant-Appellant*

**v.**

**PETER O'ROURKE, ACTING SECRETARY OF
VETERANS AFFAIRS,**
*Respondent-Appellee*

------------------------------------------------------------------------------------

**SARAH AKTEPY,**
*Claimant-Appellant*

**v.**

**PETER O'ROURKE, ACTING SECRETARY OF
VETERANS AFFAIRS,**
*Respondent-Appellee*

--------------------------------------------------------------------------------

**FRANTZ M. JEAN,**
*Claimant-Appellant*

**v.**

**PETER O'ROURKE, ACTING SECRETARY OF
VETERANS AFFAIRS,**
*Respondent-Appellee*

--------------------------------------------------------------------------------

**MARVIN MYERS,**
*Claimant-Appellant*

**v.**

**PETER O'ROURKE, ACTING SECRETARY OF
VETERANS AFFAIRS,**
*Respondent-Appellee*

————————————

2017-1747, 2017-1761, 2017-1768, 2017-1771, 2017-1772,
2017-1774, 2017-1780, 2017-1862, 2017-1967

————————————

Appeals from the United States Court of Appeals for
Veterans Claims in Nos. 16-2493, 16-2495, 16-2500, 16-
2502, 16-2503, 16-2504, 16-2506, 16-2507, 16-2511, Judge
William S. Greenberg.

————————————

Decided:  June 7, 2018

————————————————

JOHN AUBREY CHANDLER, King & Spalding LLP, Atlanta, GA, argued for claimants-appellants.  Also represented by ELIZABETH VRANICAR TANIS; CHRISTOPHER ROBERT HEALY, Washington, DC; THOMAS G. HENTOFF, LIAM JAMES MONTGOMERY, STEPHEN RABER, Williams & Connolly LLP, Washington, DC.

ALEXANDER ORLANDO CANIZARES, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent-appellee. Also represented by CHAD A. READLER, ROBERT E. KIRSCHMAN, JR., MARTIN F. HOCKEY, JR.; BRIAN D. GRIFFIN, JONATHAN KRISCH, Office of General Counsel, United States Department of Veterans Affairs, Washington, DC.

————————————————

Before PROST, *Chief Judge,* SCHALL and MOORE, *Circuit Judges.*

Opinion for the court filed by *Chief Judge* PROST.

Concurring opinion filed by *Circuit Judge* MOORE.

PROST, *Chief Judge.*

The nine individual appellants in this consolidated appeal are veterans or spouses of veterans who have appealed the Department of Veterans Affairs' ("VA") denial of their claims for service-connected disability benefits.  Based on delays that have occurred in each of their cases, Appellants petitioned for writs of mandamus, asking the U.S. Court of Appeals for Veterans Claims ("Veterans Court") for relief.  The Veterans Court denied the petitions.  Although we do not opine as to whether we agree with the Veterans Court's conclusion in each case, we hold that the Veterans Court did not apply the proper

standard for evaluating mandamus petitions based on unreasonable delay. Accordingly, we vacate the denial of the mandamus petitions in certain cases and remand for additional consideration.

I

Veterans are entitled to compensation "[f]or disability resulting from personal injury suffered or disease contracted in line of duty, or for aggravation of a preexisting injury suffered or disease contracted in line of duty, in the active military, naval, or air service, during a period of war." 38 U.S.C. § 1110; *see id.* § 1121 (wartime death compensation for designated heirs and dependents); *id.* § 1131 (peacetime disability compensation); *id.* § 1141 (peacetime death compensation for designated heirs and dependents). "Veteran's disability benefits are nondiscretionary, statutorily mandated benefits," and a veteran is entitled to such benefits if he or she satisfies the eligibility requirements. *Cushman v. Shinseki*, 576 F.3d 1290, 1298 (Fed. Cir. 2009).

A veteran begins the process of seeking benefits by filing a claim with a VA regional office. If the veteran receives an unfavorable "rating decision" from the regional office (e.g., a denial of a claim for disability benefits), he or she begins the appeal process by filing a Notice of Disagreement. *See* 38 U.S.C. § 7105(a). Once a Notice of Disagreement is filed,[1] the VA then issues the next document required in the appeal process—the Statement of the Case ("SOC"). On average, the VA takes 500 days to

---

[1] After the Notice of Disagreement is filed, the veteran may either proceed directly with his or her appeal to the Board of Veterans' Appeals ("BVA"), as outlined here, or first request de novo review by a VA Decision Review Officer at the regional office.

prepare the SOC.[2]  Suppl. App. 4095.  After receiving the SOC, a veteran may then file a notice of appeal with the BVA, also known as a "Form 9."  *See* 38 C.F.R. § 19.30(b).

Once the veteran files a Form 9, the VA completes a Certification of Appeal.  *See* 38 C.F.R. § 19.35.  The certification process appears to take the VA about two and a half hours to complete, on average.  J.A. 508.  Nonetheless, veterans wait an average of 773 days for the VA to issue the Certification of Appeal, plus an additional 321 days for the VA to transfer the certified appeal to the BVA for docketing.  Suppl. App. 4095; *see* 38 C.F.R. § 19.36.  In contrast to preparation of the SOC, for which there is arguably an explanation for some delay, it is unclear to us why this two-and-a-half-hour certification process takes an average of 773 days to complete—and the government has not provided an explanation.  And the average 321-day delay that occurs when the VA transfers the certified appeal to the BVA is even more mysterious.  The govern-

---

[2]    As the government explains in its briefing, after a veteran files a Notice of Disagreement, the agency reexamines the claim and determines whether additional review or development is warranted.  If the disagreement is not resolved by granting the benefit sought or through withdrawal of the Notice of Disagreement, the VA must then prepare an SOC.  *See* 38 U.S.C. § 7105(d)(1).  As outlined by statute, the SOC includes:

> (A) A summary of the evidence in the case pertinent to the issue or issues with which disagreement has been expressed.
> (B) A citation to pertinent laws and regulations and a discussion of how such laws and regulations affect the agency's decision.
> (C) The decision on each issue and a summary of the reasons for such decision.

38 U.S.C. § 7105(d)(1); *see* 38 C.F.R. § 19.29.

ment, again, has not explained the cause of this delay, even though the transfer process appears to consist of simply transferring appellate records.

After these often-significant periods of delay, the BVA will issue its decision. Overall, the average time from the filing of a Notice of Disagreement to issuance of a BVA decision is over five years. Suppl. App. 4095.

The BVA's decision may then be appealed to the Veterans Court, 38 U.S.C. § 7252(a), and that decision may then be appealed to this court, *id.* §§ 7252(c), 7292.

## II

Appellants, along with eight other veterans, petitioned the Veterans Court to issue writs of mandamus in response to alleged unreasonable delays in each of their cases.[3] Appellants' mandamus petitions are substantially identical. Each broadly discusses the delays experienced by veterans awaiting resolution of their disability benefits claims with the VA. For example, the petitions allege that "[a] veteran whose disability benefits are denied by the VA wait[s], on average, 1448 days from the time the VA denies the veteran's request for benefits to the time that the [BVA] rules on the veteran's appeal." *E.g.*, J.A. 101. Appellants argue that this approximately four-year delay violates due process. *Id.* Each mandamus petition only briefly addresses the facts of the individual petitioner's case. *See, e.g.*, J.A. 104–05.[4]

---

[3]  The appeals of four other individuals were consolidated under a separate appeal number. *Rose v. O'Rourke*, No. 17-1762. The consolidated appeals were argued together, and this court will issue a separate opinion to address the cases of those four individuals.

[4]  We note that each mandamus petition in this case asked for broad relief, including a declaration "hold[ing]

The Veterans Court entered final judgments denying Appellants' petitions between January and March 2017, and each Appellant timely appealed. We have jurisdiction under 38 U.S.C. § 7292. *See Lamb v. Principi*, 284 F.3d 1378, 1382 (Fed. Cir. 2002).

### III

This court's jurisdiction to review decisions of the Veterans Court is limited. We "may not review (A) a challenge to a factual determination, or (B) a challenge to a law or regulation as applied to the facts of a particular case." 38 U.S.C. § 7261(d)(2). This court does, however, have jurisdiction to "decide all relevant questions of law, including interpreting constitutional and statutory provisions." *Id.* § 7261(d)(1).

Appellants raise two arguments on appeal: first, that the Veterans Court should have applied a different legal standard to analyze their mandamus petitions based on unreasonable delay; and second, that the Veterans Court improperly denied their due process claims. Based on these arguments, Appellants ask this court to enter an order finding the delays suffered by Appellants unconstitutional and directing the Secretary to eliminate unreasonable delay. Alternatively, Appellants ask us to

---

unconstitutional under the Due Process Clause of the Fifth Amendment to the Constitution any statute, regulation or practice that interferes with prompt and speedy appeals," *see, e.g.*, J.A. 117, and holding "that the delays regarding the approximately 146,000 pending appeals violate the veterans' due process rights," *see, e.g.*, J.A. 104 ¶ 11. On appeal, however, Appellants now state that they seek relief only with respect to each individual's particular claim and not on behalf of all veterans with pending claims before the VA. Appellants' Reply Br. 30.

remand these cases with instructions to apply a different legal standard when analyzing unreasonable delay.

A

Appellants' claims of unreasonable delay arise by way of mandamus petitions filed in each of their individual cases. Under the All Writs Act, "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). This power extends to the Veterans Court. *Cox v. West*, 149 F.3d 1360, 1363–64 (Fed. Cir. 1998). Although "[t]he All Writs Act is not an independent basis of jurisdiction," *Baker Perkins, Inc. v. Werner & Pfleiderer Corp.*, 710 F.2d 1561, 1565 (Fed. Cir. 1983), it allows courts to issue writs "in aid of their respective jurisdictions," 28 U.S.C. § 1651(a).

With respect to mandamus petitions alleging unreasonable delay, the U.S. Court of Appeals for the D.C. Circuit has explained that "[b]ecause the statutory obligation of a Court of Appeals to review on the merits may be defeated by an agency that fails to resolve disputes, a Circuit Court may resolve claims of unreasonable delay in order to protect its future jurisdiction." *Telecomms. Research & Action Ctr. v. FCC* ("*TRAC*"), 750 F.2d 70, 76 (D.C. Cir. 1984); *see also FTC v. Dean Foods Co.*, 384 U.S. 597, 603 (1966) (noting that the All Writs Act "extends to the potential jurisdiction of the appellate court where an appeal is not then pending but may be later perfected"). Mandamus is thus an appropriate procedural vehicle to address claims of unreasonable delay in this context.[5]

---

[5] "Because the issuance of the writ is a matter vested in the discretion of the court to which the petition is made, and because this Court is not presented with an original writ of mandamus," we need not analyze each

The statute that outlines the Veterans Court's scope of review, 38 U.S.C. § 7261, states:

> (a) In any action brought under this chapter, the Court of Appeals for Veterans Claims, to the extent necessary to its decision and when presented, shall—
>
> . . .
>> (2) compel action of the Secretary unlawfully withheld or unreasonably delayed . . . .

38 U.S.C. § 7261(a)(2). This statute was derived from the similar scope of review statute in the Administrative Procedure Act ("APA"). *See* 5 U.S.C. § 706(1) ("[T]he reviewing court shall . . . (1) compel agency action unlawfully withheld or unreasonably delayed."); S. Rep. No. 100-418, at 60 (1988) ("[T]he other major scope of review provisions contained in proposed section 4026(a)(1) through (a)(3) are derived specifically from section 706 of the APA. Thus, it is the Committee's intention that the court shall have the same authority as it would in cases arising under the APA to review and act upon questions other than matters of material fact made in reaching a decision on an individual claim for VA benefits . . . .").[6]

---

traditional mandamus requirement. *Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367, 391 (2004); *see id.* at 380–81 (listing the three traditional requirements). This, however, does not detract from the fact that all three requirements must be demonstrated for mandamus to issue. *See id.* at 380–81. Instead, we remand for the Veterans Court to consider the traditional mandamus requirements as informed by the *TRAC* analysis.

[6] The original version of § 7261(a)(2) allowed the Veterans Court to "compel action of the Administrator unlawfully withheld," but did not include action "unreasonably delayed." Veterans' Judicial Review Act, Pub. L.

Section 7261 provides the standards the Veterans Court must use when reviewing actions of the Secretary. In this case, Appellants allege that the Secretary has unreasonably delayed action on their claims for disability benefits. The question becomes: how should the Veterans Court analyze whether the Secretary has "unreasonably delayed" such action?

To answer this question, the Veterans Court employs the standard outlined in *Costanza v. West*, 12 Vet. App. 133 (1999) (per curiam). Appellants contend, however, that the Veterans Court should instead use the standard outlined by the D.C. Circuit in *TRAC*, 750 F.2d at 79–80. As explained below, we agree with Appellants that *TRAC* provides a more appropriate framework for analyzing claims of unreasonable delay.

1

Since 1999, the Veterans Court has applied the *Costanza* standard to evaluate mandamus petitions based on alleged unreasonable delay. There is little to be said about this standard's origin. In a short, per curiam opinion, the Veterans Court held that a mandamus petitioner had not satisfied the second mandamus requirement (a clear and indisputable right to the writ) because "[h]e had not demonstrated that the delay he complains of is so extraordinary, given the demands and resources of the Secretary, that the delay amounts to an arbitrary refusal to act, and not the product of a burdened system." *Costanza*, 12 Vet. App. at 134. Later cases applied this same standard, and the en banc Veterans Court in *Rib-*

No. 100-687, sec. 301(a), § 4061(a)(2), 102 Stat. 4105, 4115 (1988). Congress amended the statute one year later to add "or unreasonably delayed." Veterans' Benefits Amendments of 1989, Pub. L. No. 101-237, § 602(c), 103 Stat. 2062, 2095 (1989).

*audo v. Nicholson* seemed to approve of the standard. *See* 20 Vet. App. 552, 555 (2007) (en banc) ("When delay is alleged as the basis for a petition, this Court has held that a clear and indisputable right to the writ does not exist unless the petitioner demonstrates that the alleged delay is so extraordinary, given the demands on and resources of the Secretary, that it is equivalent to an arbitrary refusal by the Secretary to act.").

Although this court in a handful of non-precedential decisions has acknowledged the Veterans Court's use of the *Costanza* standard, we have yet to adopt the standard or endorse its use in a precedential opinion. *See, e.g.*, *Philippeaux v. Shulkin*, 702 F. App'x 977, 980 (Fed. Cir. 2017); *McChesky v. McDonald*, 635 F. App'x 882, 886 (Fed. Cir. 2015); *Davis v. McDonald*, 593 F. App'x 992, 994 (Fed. Cir. 2014); *Jackson v. Shinseki*, 338 F. App'x 898, 901–02 (Fed. Cir. 2009).

2

Before the Veterans Court's decision in *Costanza,* some circuits had been using the standard developed by the D.C. Circuit to analyze mandamus petitions based on alleged unreasonable delay by an agency. *See TRAC*, 750 F.2d at 79–81; *Indep. Min. Co. v. Babbitt*, 105 F.3d 502, 507 (9th Cir. 1997); *Towns of Wellesley, Concord & Norwood, Mass. v. FERC*, 829 F.2d 275, 277 (1st Cir. 1987). In *TRAC*, the D.C. Circuit explained that the overarching inquiry in analyzing a claim of unreasonable delay is "whether the agency's delay is so egregious as to warrant mandamus." *TRAC*, 750 F.2d at 79. The D.C. Circuit pointed to six factors as relevant to this inquiry: (1) the time agencies take to make decisions must be governed by a "rule of reason"; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere

of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find "any impropriety lurking behind agency lassitude" in order to hold that agency action is unreasonably delayed. *Id.* at 80. In *TRAC* itself, the D.C. Circuit recognized that this standard is "hardly ironclad, and sometimes suffers from vagueness," *id.*, and the court has recently emphasized that each case should be analyzed based on its unique circumstances, *see Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016).[7]

Other circuit courts have adopted the *TRAC* standard to evaluate mandamus petitions based on alleged unreasonable delay. *In re A Cmty. Voice*, 878 F.3d 779, 783–84 (9th Cir. 2017) ("When deciding whether to grant a mandamus petition on the grounds of unreasonable delay, this court applies the six factor balancing test set out by the D.C. Circuit in *TRAC*."); *Towns of Wellesley, Concord & Norwood, Mass.*, 829 F.2d at 277. And, even the Veterans Court in its early days considered some of the *TRAC* factors when evaluating a mandamus petition based on

---

[7] More recently, courts employing *TRAC* have also noted a need to first determine whether an agency has a duty to act, given that "an agency cannot unreasonably delay that which it is not required to do." *In re A Cmty. Voice*, 878 F.3d 779, 784 (9th Cir. 2017); *cf. Heckler v. Ringer*, 466 U.S. 602, 616 (1984) (noting in the context of a mandamus based on 28 U.S.C. § 1361 that an agency must owe the petitioner a "clear nondiscretionary duty"). In this case, however, no party disputes that the VA has a duty to adjudicate and issue final decisions on these pending claims for disability benefits.

unreasonable delay.  *See Erspamer v. Derwinski*, 1 Vet. App. 3, 9–11 (1990).

3

With these two proposed frameworks in mind, we turn to the question before us—namely, the proper standard for evaluating claims of unreasonable delay in the VA's adjudication of veterans' benefits.

In Appellants' view, the *Costanza* standard is insurmountable, as it focuses solely on the VA's interests at the expense of the veterans' interests.  Further, Appellants contend that by requiring a "refusal" to act, the *Costanza* standard effectively requires a petitioner to demonstrate an affirmative or intentional refusal to act by the VA. Meanwhile, Appellants assure us, the *TRAC* standard provides a more balanced approach because it requires consideration of the veterans' interests and does not require a showing of intent.  We agree.  As explained below, the six *TRAC* factors serve as a useful starting point for the Veterans Court to analyze mandamus petitions based on unreasonable delay in the VA's processing of benefits claims and appeals.

The first *TRAC* factor—that "the time agencies take to make decisions must be governed by a 'rule of reason,'" *TRAC*, 750 F.2d at 80—is considered to be the most important factor in some circuits.  *In re A Cmty. Voice*, 878 F.3d at 786 ("The most important is the first factor, the 'rule of reason,' though it, like the others, is not itself determinative.").  The second *TRAC* factor, of course, relates to the first factor, as "a timetable or other indication of the speed with which [Congress] expects the agency to proceed" may "supply content" for the rule of reason. *TRAC*, 750 F.2d at 80.

Although no congressional timetable for handling these benefits claims currently exists, other considerations can help form a "rule of reason" as to an appropriate

timeline. The "rule of reason" analysis must, of course, look at the particular agency action for which unreasonable delay is alleged. It is reasonable that more complex and substantive agency actions take longer than purely ministerial ones. The "rule of reason" analysis may consider the statutory instruction that cases on remand receive expedited treatment. *See* 38 U.S.C. § 5109B ("The Secretary shall take such actions as may be necessary to provide for the expeditious treatment by the appropriate regional office of the Veterans Benefits Administration of any claim that is remanded to a regional office of the Veterans Benefits Administration by the Board of Veterans' Appeals."); *id.* § 7112 ("The Secretary shall take such actions as may be necessary to provide for the expeditious treatment by the Board of any claim that is remanded to the Secretary by the Court of Appeals for Veterans Claims."). The "rule of reason" analysis may also consider whether the delays complained of are based on complete inaction by the VA, or whether the delays are due in part to the VA's statutory duty to assist a claimant in developing his or her case.[8] For example, it should also consider whether delays are due to the agency's failure to perform certain ministerial tasks such as filling out the form certifying the appeal to the BVA and docketing by the BVA.

With these considerations in mind, we see no reason to articulate a hard and fast rule with respect to the point in time at which a delay becomes unreasonable. Because, among other factors, reasonableness depends on the particular agency action that is delayed, a two-year delay

---

[8]   We also note that the Veterans Appeals Improvement and Modernization Act of 2017, Pub. L. No. 115-55, 131 Stat. 1105 (2017), modifies some aspects of the appeal process, and therefore the unreasonable delay analysis may vary based in part on these new changes.

may be unreasonable in one case, and it may not be in another.  For example, the delay may be the result of the VA's duty to assist the veteran or a delay in obtaining certain historical records.[9]  Alternatively, the delay may be the result of a failure to complete clerical or ministerial tasks for the veteran.  This "rule of reason" inquiry is best left to the discretion of the Veterans Court.[10]

The third and fifth *TRAC* factors address what seems to be Appellants' primary concern—namely, that *Costanza* leaves no room for the Veterans Court to consider the interests of each veteran.  Under the third factor, the court considers that "delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake."  *TRAC*, 750 F.2d at 80.  Veterans' disability claims always involve human health and welfare.

Under the fifth factor, the court considers the nature and extent of the interests prejudiced by the delay.  As other courts have noted, these two *TRAC* factors often overlap.  *In re A Cmty. Voice*, 878 F.3d at 787 (referring back to the threat to human welfare and concluding that "children exposed to lead poisoning due to the failure of

---

[9]    Again, however, we see no reasonable explanation for the historic delays that have occurred during appeal certification, which takes an average of 773 days, and during transfer to the BVA, which takes another 321 days, on average.  Such delays appear to be inexplicable.

[10]    With respect to Appellants' reliance on statistics regarding average delays, we agree with the Veterans Court that reliance on such statistics is merely speculative.  *See* J.A. 8, 52, 26.  Each mandamus petition should be based on the facts of that particular case.  As we have explained before, such potential delays depend on a long "chain of hypothesized actions."  *Ebanks v. Shulkin*, 877 F.3d 1037, 1039 (Fed. Cir. 2017).

EPA to act are severely prejudiced by EPA's delay, and the fifth factor thus favors issuance of the writ"); *In re Barr Labs., Inc.*, 930 F.2d 72, 75 (D.C. Cir. 1991) (noting that the third *TRAC* factor "overlaps with the fifth").

The fifth factor incorporates an analysis of the effect of a delay on a particular veteran. For example, the Veterans Court may find that it more strongly favors a finding of unreasonable delay where it is evident that a particular veteran is wholly dependent on the requested disability benefits. As Appellants point out, many veterans depend on these disability benefits for basic necessities, such as food, clothing, housing, and medical care. At the same time, however, the Veterans Court may find this factor does not weigh heavily toward a finding of unreasonable delay where the veteran has a sustainable source of income outside of the VA benefits system.

The fourth *TRAC* factor requires consideration of the effect of expediting delayed action on agency activities of a higher or competing priority. This factor addresses the government's primary praise of the *Costanza* test—that the Veterans Court should be able to take account of the practical realities of the burdened veterans' benefits system. *See* Appellee's Br. 27. We agree with the government that this is a consideration to include in the unreasonable delay analysis, and we think the *TRAC* standard sufficiently encompasses this concern.

This fourth factor allows the Veterans Court to consider the impact granting mandamus in a particular appeal may have on other agency activities. In other words, the VA may consider as one aspect of the overall *TRAC* analysis the fact that the VA has fixed resources, and that the agency is in a better position than the courts to evaluate how to use those limited resources. *See In re Barr Labs., Inc.*, 930 F.2d at 76 ("In short, we have no basis for reordering agency priorities. The agency is in a unique—and authoritative—position to view its projects

as a whole, estimate the prospects for each, and allocate its resources in the optimal way.  Such budget flexibility as Congress has allowed the agency is not for us to hijack."); *cf. Mass. v. EPA*, 549 U.S. 497, 527 (2007) ("[A]n agency has broad discretion to choose how best to marshal its limited resources and personnel to carry out its delegated responsibilities."); *Heckler v. Chaney*, 470 U.S. 821, 831–32 (1985) ("The agency is far better equipped than the courts to deal with the many variables involved in the proper ordering of its priorities.").  The VA is necessarily constrained by the resources Congress appropriates. While forcing the VA to focus such limited resources on addressing delays in certain appeals will inure to the benefit of some veterans, such efforts may work a detriment to other veterans who are also relying on the VA for various types of assistance.

This inquiry may also include the impact on other applicants who have filed claims for benefits.  For example, granting a mandamus petition may simply shift a finite number of resources from one pending claim to another. Other circuits have expressed similar concerns in other agency contexts.  *See, e.g.*, *In re Barr Labs., Inc.*, 930 F.2d at 75 ("Assuming constant resources for the generic drug [approval] program, a judicial order putting [the mandamus petitioner] at the head of the queue simply moves all others back one space and produces no net gain.").

Finally, the sixth *TRAC* factor goes directly to a primary dispute regarding the *Costanza* standard.  In Appellants' view, *Costanza* requires a mandamus petitioner to show an intentional or affirmative refusal to act by the VA.  The government disagrees that *Costanza* requires actual intent and instead characterizes the *Costanza* standard as allowing mandamus where inaction "amounts" to a refusal to act.

It is unclear whether the Veterans Court has required a showing of intentional refusal to act when applying

*Costanza*. Regardless, in our view, the sixth *TRAC* factor gives this type of inquiry its due. Under this factor, the Veterans Court need not find "any impropriety lurking behind agency lassitude" to hold that agency action is unreasonably delayed. *TRAC*, 750 F.2d at 80. A writ may be appropriate under the *TRAC* analysis even where there is no evidence of bad faith. *See In re A Cmty. Voice*, 878 F.3d at 787 ("Even assuming that EPA has numerous competing priorities under the fourth factor and has acted in good faith under the sixth factor, the clear balance of the *TRAC* factors favors issuance of the writ."). And certainly, in the unlikely event that an individual could show that the VA "singled [the individual] out for mistreatment," such evidence would tend to favor issuance of the writ. *In re Barr Labs., Inc.*, 930 F.2d at 75.

Accordingly, today we adopt the *TRAC* standard as the appropriate standard for the Veterans Court to use in evaluating mandamus petitions based on alleged unreasonable delay. And, "[t]o the extent [our] prior non-precedential rulings diverge from our holding today, any perceived conflict is superseded by today's precedential authority." *Monk v. Shulkin*, 855 F.3d 1312, 1322 (Fed. Cir. 2017).

B

Appellants also contend that, under the factors outlined in *Mathews v. Eldridge*, the delays they have experienced violate procedural due process. *See* 424 U.S. 319, 335 (1976).

Appellants' mandamus petitions broadly ask the Veterans Court to "declare that the VA's conduct violates the Due Process Clause of the Fifth Amendment" and to "impose a remedy sufficient to address these violations of [Appellants'] constitutional rights." *E.g.*, J.A. 102. The petitions also ask the Veterans Court "to require [the VA] to process promptly the individual claim embodied in this petition, and to declare that the delays regarding the

approximately 146,000 pending appeals violate the veterans' due process rights." *E.g.*, J.A. 104 ¶ 11.  Finally, the petitions conclude by asking for an order "hold[ing] unconstitutional under the Due Process Clause of the Fifth Amendment to the Constitution any statute, regulation or practice that interferes with prompt and speedy appeals." *E.g.*, J.A. 117.  In sum, Appellants' petitions ask the Veterans Court to broadly declare that the entire process is unconstitutional. *Cf. Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) (noting that a claim under § 706(1) of the APA is limited to "discrete agency action" and precludes a "broad programmatic attack").

Given our holding that the Veterans Court should have conducted a more searching inquiry in evaluating Appellants' mandamus petitions, the Veterans Court will have the opportunity to determine, under the *TRAC* standard, whether the delay in each individual case was unreasonable.  As the D.C. Circuit has explained,

> a claim that a plaintiff has been denied due process because of delayed agency action is essentially no different than an unreasonable delay claim; indeed, if there is any difference at all, it is that an unreasonable delay claim would likely be triggered *prior to* a delay becoming so prolonged that it qualifies as a constitutional deprivation of property.

*Vietnam Veterans of Am. v. Shinseki*, 599 F.3d 654, 660 (D.C. Cir. 2010).  If the Veterans Court, employing the *TRAC* analysis, finds a delay unreasonable (or not unreasonable), it need not separately analyze the due process claim based on that same delay. *See id.*

## IV

Although this opinion will require remanding certain cases for consideration under the *TRAC* standard, we note some individual cases have become moot.  In Ms. Aktepy's

case, the BVA recently issued its decision, making her appeal moot. As to Ms. Scyphers, while it appears that the original appellate proceedings regarding her Notice of Disagreement filed in October 2014 concluded with a grant of benefits in her favor, she has now filed a Notice of Disagreement with respect to the effective date of that award of benefits. ECF No. 82-1 at 4; *see also* ECF No. 69-1 at 3. This second Notice of Disagreement was filed in November 2017; the VA issued the SOC in January 2018; and Ms. Scyphers filed her Form 9 in April 2018. ECF No. 82-1 at 4. Because the delays on which her original mandamus petition was based have essentially been reset, we find her appeal moot. With respect to her recently filed appeal, Ms. Scyphers remains free to, in the future, file a mandamus petition based on delay, should the need arise. Finally, and regretfully, the parties have informed us that Mr. Myers passed away during the course of this appeal, and the parties agree that his appeal is now moot.

## V

For the reasons above, we hold that the Veterans Court should look to the *TRAC* factors as guidance when evaluating mandamus petitions based on unreasonable delay in the VA's adjudication of benefits claims. We vacate and remand the appeals of Mr. Martin, Mr. Jean, Mr. Matthews, Mr. Meissgeier, Ms. Mote, and Mr. Rhodes for reconsideration under the *TRAC* standard.[11] We dismiss the appeals of Mr. Myers, Ms. Scyphers, and Ms. Aktepy as moot.

---

[11] Although two of the Veterans Court's orders in this consolidated set of appeals did not expressly rely on the *Costanza* standard, it is unclear what standard, if any, the Veterans Court employed in those cases. As such, we find it appropriate to remand those cases for consideration under the *TRAC* standard.

## VACATED-IN-PART, REMANDED-IN-PART, AND DISMISSED-IN-PART

Costs

Costs to Appellants.

# United States Court of Appeals
# for the Federal Circuit

---

**JOHN MARTIN,**
*Claimant-Appellant*

**v.**

**PETER O'ROURKE, ACTING SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

-------------------------------------------------------------------------------

**WILLIAM RHODES,**
*Claimant-Appellant*

**v.**

**PETER O'ROURKE, ACTING SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

-------------------------------------------------------------------------------

**EUGENIA MOTE,**
*Claimant-Appellant*

**v.**

**PETER O'ROURKE, ACTING SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

-------------------------------------------------------------------------------

**THOMAS MEISSGEIER,**
*Claimant-Appellant*

**v.**

**PETER O'ROURKE, ACTING SECRETARY OF
VETERANS AFFAIRS,**
*Respondent-Appellee*

------------------------------------------------------------------------

**HUGH D. MATTHEWS,**
*Claimant-Appellant*

**v.**

**PETER O'ROURKE, ACTING SECRETARY OF
VETERANS AFFAIRS,**
*Respondent-Appellee*

------------------------------------------------------------------------

**BETTY D. SCYPHERS,**
*Claimant-Appellant*

**v.**

**PETER O'ROURKE, ACTING SECRETARY OF
VETERANS AFFAIRS,**
*Respondent-Appellee*

------------------------------------------------------------------------

**SARAH AKTEPY,**
*Claimant-Appellant*

**v.**

**PETER O'ROURKE, ACTING SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

-------------------------------------------------------------------------------

**FRANTZ M. JEAN,**
*Claimant-Appellant*

**v.**

**PETER O'ROURKE, ACTING SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

-------------------------------------------------------------------------------

**MARVIN MYERS,**
*Claimant-Appellant*

**v.**

**PETER O'ROURKE, ACTING SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

———————————

2017-1747, 2017-1761, 2017-1768, 2017-1771, 2017-1772, 2017-1774, 2017-1780, 2017-1862, 2017-1967

———————————

Appeals from the United States Court of Appeals for Veterans Claims in Nos. 16-2493, 16-2495, 16-2500, 16-2502, 16-2503, 16-2504, 16-2506, 16-2507, 16-2511, Judge William S. Greenberg.

———————————

MOORE, *Circuit Judge*, concurring.

I join the majority opinion in full, but write separately because more needs to be said and done. In the cases before us today, we once again find ourselves faced with the fundamentally flawed program that is the veterans' disability benefits system. Established with the intent of serving those who have served their country, the veterans' disability benefits system is meant to support veterans by providing what are often life-sustaining funds. Instead, many veterans find themselves trapped for years in a bureaucratic labyrinth, plagued by delays and inaction.

The Department of Veterans' Affairs' own figures illustrate the wide scope of the problem. In a 2017 report, the Board of Veterans' Appeals ("Board") stated that after the receipt of a notice of disagreement, it takes the Veterans Benefits Administration ("VBA") an average of 500 days to prepare a statement of the case. The veteran then has 60 days to file a substantive appeal but on average only takes 37 days. Once the appeal is received, it takes the VBA an average of **773 days** to certify the appeal. This is a ministerial process that involves checking that the file is correct and complete and completing a two-page form which could take no more than a few minutes to fill out. The VA's own table of Work Rate Standards allocates 2.6 hours to Appeal Certifications. J.A. 508. So there is no confusion as to the utter simplicity and purely clerical nature of this form, I have attached a copy to this opinion. As can be seen, the form consists of a total of 13 items to be filled out, each requiring nothing more complicated than the veteran's name, the dates of various prior actions before the VA, and whether or not a hearing was requested. Unsurprisingly, the government has provided no reason why such a simple task takes over two years to complete, and I cannot conceive of any rational explanation.

Of course, certification of an appeal only moves a veteran's case out of the hands of the VBA and into the hands of the Board where the case enters a new bureaucratic morass. Once the appeal has been certified (the two-page form which takes the VA on average 773 days to complete), a veteran must wait, on average, another **321 days** for the appeal to be docketed by the Board.[1] Even after being asked repeatedly at oral argument to explain how docketing could possibly take so long, in post-argument letters to the court, the government could not explain why the average veteran spends more than ten months waiting for his appeal to be "docketed" which the government explains is distinct from the certification and hearing stages. At our appellate court, cases take, at most, 30 minutes to docket. But, the ministerial acts of certifying the appeal (2 page sheet attached) and docketing the appeal take the VA on average **1,094 days**.

---

[1] The VA has suggested that this delay is in part attributable to data entry errors by VA employees. "After cases are transferred to the Board, a team of employees must manually review and correct most incoming cases due to issues with labeling, mismatched dates, and missing files. Via an internal study, VA determined that up to 88 percent of cases transferred to the Board had such errors." U.S. Gov't Accountability Off., GAO-17-234, VA Disability Benefits: Additional Planning Would Enhance Efforts to Improve the Timeliness of Appeals Decisions 20 (2017) ("GAO Report"). The government cannot justify delays in case processing by pointing to its own clerical errors such as data entry or labeling. If anything, such evidence if present in an individual case weighs in favor of mandamus.

In total the appeals process takes over **five and a half years** on average from the time a notice of disagreement is filed until the Board issues a decision, which often sets the stage for more proceedings on remand. In short, even when veterans win on appeal, they have lost years of their lives living in constant uncertainty, possibly in need of daily necessities such as food and shelter, deprived of the very funds to which they are later found to have been entitled.

The delays faced by veterans affect not just them, but their families and friends as well. Even if a veteran is fully entitled to benefits, should he die during the pendency of the resolution (or appeal) of his disability benefits claim, the veteran and his family lose the right to the deserved benefits unless the veteran has a spouse, minor children, or dependent parents. *See Youngman v. Shinseki*, 699 F.3d 1301, 1304 (Fed. Cir. 2012). Adult children and extended families, who have provided years of financial or other support to the veteran because he was not receiving his disability benefits, cannot recover the benefits the veteran was entitled to during that time. In the cases before us today, three of the veterans died while their cases were pending before the VA or this court.

While it is understandable that preparing the statement of the case, and other substantive steps in the process, may take significant amounts of time, it is unconscionable how long it takes the VA to perform the many ministerial steps that take place after this. In most of the cases before us today, when a mandamus petition was filed, the VA actually took action. These proceedings are supposed to be non-adversarial. *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 431–32 (2011). They are intended to be pro-claimant. *Id.* A veteran should not have to hire a lawyer to file a mandamus petition to get the VA to act in his case.

Under separation of powers, we do not have the authority to require the Secretary to take specific actions to fix these many problems across all veterans' cases—an action desperately needed. Instead, we are constrained to the facts of the particular cases in front of us. However, the proceedings in these cases illustrate the fundamental problems with the system—problems that have been acknowledged by the VA. Although the systemic resolution of these matters is not within the scope of this court's authority, there is little doubt as to the President's ability to take action.

The President signed into law the Veterans Appeals Improvement and Modernization Act on August 23, 2017. This new structure with different tracks for Board appeals may streamline some cases after it takes effect in February 2019. This has no impact on the 470,000 appeals currently before the Board.[2] But more importantly, the new law contains no deadlines for certification of an appeal (the two-page document that currently takes the VA an average of 773 days to process) or the Board docketing (the process which currently takes the Board on average 321 days to complete).[3] The Board has reported

---

[2]    The new statute provides a mechanism, RAMP, for addressing some existing cases. RAMP, however, requires the veteran to withdraw his current appeal, and the Board will not start reviewing RAMP appeals until October 2018. According to the government, RAMP has gone virtually unused. U.S. Gov't Accountability Off., GAO-18-352, VA Disability Benefits: Improved Planning Practices Would Better Ensure Successful Appeals Reform 21-22 & n.42 (2018).

[3]    I note that the VA is implementing a new automated process, Caseflow, which it hopes will eliminate the manual data entry errors it had previously found plagued

that it has set a goal for itself of completing appeals (in which no additional evidence is submitted and no hearing is requested) in an average of 365 days. This is not law and there are no consequences for the Board's failure to comply with its own goal. Moreover, this *goal* does not appear to include the **1094 days** which it takes for certifying the appeal or docketing the appeal. So after a veteran waits on average 1,094 days during which time nothing at all is being done on his case, then the Board will try to resolve his appeal in, on average, 365 days *if* he waives his right to a hearing and agrees not to submit any additional evidence in support of his claim.

I hope the many minds which are focused on these problems, this new legislation, Congressional oversight and the VA reforms will improve what all acknowledge is a deeply flawed veterans' disability benefits system. In the meantime, it is the job of the courts to review individual cases with claims of unreasonable delay. As in these cases, the VA acts quicker when a mandamus petition has been filed. Under the correct mandamus standard which we adopt today, veterans should have a much easier time forcing VA action through the mechanism of mandamus. For example, it is hard to imagine how Mr. Martin could be denied mandamus. He received his SSOC in December 2015 and filed his notice of appeal the same month. The VA certified his appeal to the BVA in February 2016. The next step would be for the BVA to docket his appeal, a seemingly ministerial act. He filed his petition for mandamus in September 2016 after the BVA failed to perform this ministerial act for more than seven months. According to the government, to this date, *more than 27 months later*, his appeal to the BVA has still not been docketed. We note that in the other cases before us today where

cases transferred to the Board. GAO Report at 20. This may speed up the docketing process.

docketing occurred, it occurred at most within a couple of months. *See* Joint Submission on Case Status (Myers: Certified to the BVA-November 2016, docketed-November 2016; Aktepy: Certified to BVA-2/2017, docketed-6/2017; Meissgeier: Certified to BVA-11/2017, docketed-4/2018). The government offered no explanation for the failure to take any action to docket the appeal for more than two years in Mr. Martin's case. Similarly, in the handful of cases before us certification to the BVA was completed in some instances within a week and in others took close to three years. *See* Joint Submission of Case Status (*compare* Matthews: Appeal Form filed-11/6/2017, Certified to BVA-11/13/2017, *with* Aktepy: Appeal form filed-4/2014, Certified to BVA-2/2017). Again, on the record before us, the government offers no explanation for the delays in certifying these cases. Once certified and docketed, appeals must be decided on a first-in-first-considered basis by the Board. *See* 38 U.S.C. § 7107(a)(4); 38 CFR § 20.900.[4] There is no similar first-in-first-out requirement for other portions of the VA process (such as rating decisions, SSOCs, BVA certification or docketing). And, the evidence before us suggests that the VA is not operating on a first-in-first-out basis for the ministerial acts of certifying or docketing the appeal.

It is unfortunate, but the takeaway from all this is quite simple: hiring a lawyer and filing a mandamus petition forces the VA to act. Absent unusual circumstances, certification and docketing should be ministerial acts which take very little time to perform. Cases which

---

[4]   The statute does permit the Board to advance a case on its docket pursuant to 38 U.S.C. § 7107 for good cause which includes an appellant's serious illness, advanced age, extreme financial hardship, or administrative error which had caused prior delays. *See* VA Manual M21-1, I.5.F.6.a.

languish at this non-substantive stage are good candidates for mandamus based on unreasonable delay and due process violations unless the government can proffer a reason for the delay specific to the case.

The men and women in these cases protected this country and the freedoms we hold dear; they were disabled in the service of their country; the least we can do is properly resolve their disability claims so that they have the food and shelter necessary for survival. It takes on average six and a half years for a veteran to challenge a VBA determination and get a decision on remand. God help this nation if it took that long for these brave men and women to answer the call to serve and protect. We owe them more.

| VA Department of Veterans Affairs | CERTIFICATION OF APPEAL | |
|---|---|---|
| 1. LAST NAME - FIRST NAME - MIDDLE NAME OF VETERAN | | 2. FILE NO. |
| 3. NAME OF APPELLANT *(If other than veteran)* | | 4. INSURANCE FILE NO. OR LOAN NO. *(If pertinent)* |

**DATES OF PROCEDURAL DOCUMENTS**

| 5A. DATE OF NOTIFICATION OF ACTION APPEALED | 5B. DATE OF SOC | 5C. DATE OF SUBSTANTIVE APPEAL/FORM 9 | 5D. DATE OF SSOC (FIRST) | 5E. DATE OF SSOC (SECOND) | 5F. DATE OF SSOC (THIRD) |
|---|---|---|---|---|---|
| | | | | | |

6. APPELLANT REPRESENTED IN THIS APPEAL BY *(Name of organization, attorney or agent)*

7. IF APPLICABLE, WHAT TYPE OF HEARING WAS REQUESTED?

☐ A. DECLINED OPTIONAL BOARD HEARING       ☐ C. REQUESTED HEARING IN WASHINGTON, DC       ☐ E. NO HEARING REQUESTED

☐ B. REQUESTING HEARING BY VIDEOCONFERENCE       ☐ D. REQUESTED HEARING AT A LOCAL VA OFFICE *(Travel Board)*

8. REMARKS *(Place additional remarks in Box 13, on following page)*

**CERTIFICATION:** It is hereby certified that all material evidence is of record, that all contentions advanced by and on behalf of the appellant have been considered under all pertinent laws, and the issues determined.

| 9. NAME AND LOCATION OF CERTIFYING OFFICE | 10. ORGANIZATIONAL ELEMENT CERTIFYING APPEAL | |
|---|---|---|
| 11A. SIGNATURE OF CERTIFYING OFFICIAL | 11B. TITLE | 11C. DATE |
| 12A. SIGNATURE OF MEDICAL MEMBER *(Insurance use only)* | 12B. TITLE | 12C. DATE |

VA FORM **8**
SEP 2017

SUPERSEDES VA FORM 8, JUNE 2008,
WHICH WILL NOT BE USED.

**CERTIFICATION OF APPEAL – VA FORM 8**

**VA** Department of Veterans Affairs | **CERTIFICATION OF APPEAL**

13. ADDITIONAL REMARKS